IN the MATTER OF DISCIPLINARY PROCEED-
INGS AGAINST Michael D. MANDELMAN,
Attorney at Law.

Supreme Court

*No. 89-0170-D. Filed October 5, 1990.*

(Also reported in 460 N.W.2d 749.)

For the Board of Attorneys Professional Responsi-
bility there was a brief by *Gregg Herman,* Milwaukee.

For the respondent there was a brief by *Gerald P.
Boyle,* Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the recommendation of the referee in this disciplinary proceeding that the license of Attorney Michael D. Mandelman to practice law in Wisconsin be suspended for five months as discipline for professional misconduct. It is the Board's position that Attorney Mandelman's misconduct warrants a license suspension for a period of six months to one year. Because Attorney Mandelman had stipulated to the allegations of professional misconduct set forth in the Board's amended and supplemental complaints, the only issue on appeal is the discipline to be imposed for that misconduct.

We determine that the nature and extent of Attorney Mandelman's misconduct, as detailed herein, warrants the suspension of his license to practice law in Wisconsin for a period of one year.

Attorney Mandelman was licensed to practice law in 1980 and practices in Milwaukee. He has not previously been the subject of a disciplinary proceeding. The referee in this proceeding is the late Honorable William C. Sachtjen, reserve judge.

The professional misconduct to which Attorney Mandelman stipulated is the following.

(1) In 1985 Attorney Mandelman filed a civil action on behalf of a client against an individual and a car company. The company was subsequently dismissed from the action after the court granted a motion alleging that there was no basis in law or fact for the claim against it and that the claim was frivolous. Attorney Mandelman told his client the company had been dismissed because the complaint against it had not been timely filed but never told her that the claim was frivo-

lous. As the action continued, Attorney Mandelman failed to return his client's telephone calls, provide her sufficient notice of the trial date or keep her advised of the progress of the matter. The referee concluded that Attorney Mandelman thereby neglected his client's matter, in violation of SCR 20.32(3).[1]

(2) In 1985 Attorney Mandelman was representing a client on a personal injury claim and for four months did not tell his client of an offer of settlement; when the client instructed him to settle the case in the offered amount, Attorney Mandelman did not effect the settlement for another six months. During this time, Attorney Mandelman failed to return his client's telephone calls. The referee concluded that Attorney Mandelman thereby neglected his client's legal matter, in violation of SCR 20.32(3).

(3) In 1985, when a client whom he was representing in various collection matters asked him to return files regarding two of those matters because he was dissatisfied with his representation, Attorney Mandelman did not return them. The client retained other counsel, who twice wrote to Attorney Mandelman demanding the files and made several trips to his office to get them. Five months later Attorney Mandelman turned over to successor counsel portions of the client's files but did not include several original documents in them until more than a month after the attorney had made a written request for them. In all, the client had to wait almost 11 months from the time of his first request for the files until Attorney Mandelman returned them in their entirety. The referee concluded that Attorney

---

[1]SCR 20.32 provides: "A lawyer may not: . . . (3) Neglect a legal matter entrusted to the lawyer."

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.3.

Mandelman thereby violated SCR 20.16(1)(b).[2]

(4) In 1986, when contacted by the driver of a car involved in an auto accident, Attorney Mandelman asked the woman to have the three passengers in her vehicle present at her home when he was to meet with her to have her sign a retainer agreement. Attorney Mandelman then met with the driver and two of the passengers and all three signed retainer agreements. In his conversations with them Attorney Mandelman never discussed any potential conflict of interest. The referee concluded that the initiation of personal contact with the passengers for the purpose of obtaining professional employment violated SCR 20.09(1)[3] and that his representation of multiple clients with adverse interests without fully disclosing the possible effect of that representation on his independent professional judgment and without obtaining their consent violated SCR 20.28(3).[4]

---

[2]SCR 20.16 provides:

**Withdrawal from employment.** (1) In General.
. . .

(b) In any event, a lawyer may not withdraw from employment until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to his or her client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.16(d).

[3]SCR 20.09 provides:

**Recommendation of professional employment.** (1) A lawyer may not recommend employment, as a private practitioner, of herself or himself, a partner or associate to a nonlawyer who has not sought his or her advice regarding employment of a lawyer.

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:7.3.

[4]SCR 20.28 provides:

(5) In 1988 a woman injured in an auto accident received a call from the driver of the vehicle the day after the accident while she was recuperating at a relative's house. The driver told her there was an attorney with him who wanted to talk with her. Attorney Mandelman was that attorney and asked the injured passenger if he could represent her and if he could come to the house where she was staying and have her sign some papers. Attorney Mandelman then visited the woman and asked if he could represent her for injuries she suffered in the accident; the woman agreed. The referee concluded that the initiation of personal contact with a prospective client for the purpose of obtaining professional employment violated SCR 20:7.3(c).[5]

Subsequently, Attorney Mandelman settled the woman's claim with the driver's insurance company without having consulted her concerning the settlement

Refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer.

. . .

(3) In the situations covered by subs. (1) and (2), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.7(a) and (b).

[5]SCR 20:7.3 provides:

Direct contact with prospective clients

. . .

(c) A lawyer may initiate personal contact including telephone contact with a prospective client for the purpose of obtaining professional employment only in the following circumstances and subject to the requirements of Rule 7.1 and paragraph (d).

. . .

5

and without her authorization and the client first learned of the settlement when informed of it by the insurance company. The referee concluded that Attorney Mandelman's failure to consult with his client regarding the settlement offer and failure to obtain authorization for settlement violated SCR 20:1.2(a).[6]

(6) In 1987 Attorney Mandelman asked one of three sisters involved in an automobile accident if he could meet with her and her sisters to discuss the accident, although none of the women had contacted him concerning it. When he met with the women, he offered to represent all of them on claims arising from the accident. The referee concluded that Attorney Mandelman's recommending his employment to nonlawyers who had not sought his advice regarding employment of a lawyer violated SCR 20.09(1).

During his representation of the sisters, Attorney Mandelman sent the liability insurer initial medical reports in February, 1988. The insurer requested additional medical information on one of the women in April, 1988 and, when it was not forthcoming, again wrote to him in July and again in October. Attorney Mandelman forwarded the requested medical records in May, 1989, together with an offer of settlement. Attorney Mandelman settled the claim of one of the clients without having discussed possible settlement with the client and without the client's having authorized him to

---

[6]SCR 20:1.2 provides:

**Scope of representation**

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter . . ..

accept a specific amount of settlement. The client did not learn of the settlement amount until she was asked to come to Attorney Mandelman's office to sign the settlement papers. The referee concluded that Attorney Mandelman failed to communicate with his client, in violation of SCR 20:1.4[7] and 20:1.2(a).

While the personal injury claims of the passenger he was representing remained pending, Attorney Mandelman represented the driver of the vehicle on traffic citations issued as a result of the accident. He filed a jury demand, entered a plea on the driver's behalf and, through his partner, made two court appearances. The referee concluded that Attorney Mandelman failed to advise his clients of a conflict of interest in the matter, in violation of SCR 20.28(1) and (2).[8]

(7) In 1987, when a man Attorney Mandelman was representing in a criminal matter and in a related

---

[7]SCR 20:1.4 provides:

**Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[8]SCR 20.28 provides:

**Refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer.** (1) A lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under sub. (3).

(2) A lawyer may not continue multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, except to the extent permitted under sub. (3).

civil matter requested an itemization of fees paid to and services rendered by him, he received no reply. He then sent a written request for the itemization and sent a copy of that request to the Board, which treated it as a grievance. In response to the Board's request to furnish an accounting for fees received and hours spent on the client's legal matters, Attorney Mandelman sent an itemized accounting which included one and one-half hours' attendance at a motion to compel discovery. In fact, Attorney Mandelman had not appeared at that hearing; indeed, costs were assessed as a result of his failure to appear. The referee concluded that Attorney Mandelman's misrepresentation to the Board violated SCR 20:8.4(c)[9] and 22.07(2).[10]

(8) In 1987 Attorney Mandelman represented a man in an action brought by a bank. Although he filed an answer on his client's behalf, Attorney Mandelman failed to attend a hearing on the bank's motion for summary judgment and a judgment was taken against his

---

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.7.

[9]SCR 20:8.4 provides: "**Misconduct**   It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation ...."

[10]SCR 22.07 provides:

**Investigation**

. . .

(2)   During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

client. During the Board's investigation of the grievance subsequently filed by the client, Attorney Mandelman stated that a stipulation had been reached between the client and the bank by which the judgment was being reopened and the amount the client would have to pay would be reduced by more than half. He also stated that he would send the Board a copy of that stipulation.

When the stipulation was not received, the Board wrote to Attorney Mandelman in September, October and November, requesting a copy of the stipulation and reminding him that his failure to produce it would constitute failure to cooperate with the Board in its investigation. The Board then ordered Attorney Mandelman to appear at its offices in December and produce the stipulation. Attorney Mandelman responded through his counsel that he was unable to appear but would send the stipulation to his counsel for immediate delivery to the Board. However, instead of receiving the stipulation, the Board received a letter stating that the stipulation had just been delivered to opposing counsel. Thus, there had been no stipulation reopening the judgment and reducing the amount of the client's obligation when Attorney Mandelman made his representation to the Board.

The referee concluded that this misrepresentation violated SCR 20:8.4(c) and 22.07(2). As Attorney Mandelman never produced the purported stipulation or adequately explained why he could not do so, the referee concluded that he failed to cooperate with the Board's investigation, in violation of SCR 22.07(3)[11] and

---

[11]SCR 22.07 provides:

**Investigation**

. . .

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respon-

20:8.1(b).[12]

(9)   In 1986 Attorney Mandelman was retained to represent a man injured in an auto accident. In 1989 he wrote to the client that his firm was in the process of reducing its caseload and asked the client to authorize transfer of his legal matter to another law firm. That letter included a document entitled "Authorization to Transfer Files and Release" by which the client would release Attorney Mandelman's office and him personally from further responsibility and liability regarding the matter. Attorney Mandelman did not advise the client to secure independent representation prior to signing that release and the client was not independently represented when Attorney Mandelman asked him to sign it. In addition to this client, Attorney Mandelman sent the same release to 12 other clients. The referee concluded that Attorney Mandelman prepared an agreement to limit his potential malpractice liability, in violation of SCR 20:1.8(h).[13]

---

dent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

[12]SCR 20:8.1 provides:

**Bar admission and disciplinary matters**
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . .

(b)   fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[13]SCR 20:1.8 provides:

**Conflict of interest: prohibited transaction**

. . .

10

(10)   In 1985 Attorney Mandelman undertook the representation of a man claiming worker's compensation benefits from employment at a meat packing company. He had met with the client on numerous occasions concerning this representation when, in July, 1988, he advised him that he could not continue the representation because his father-in-law was president of the meat packing company and his wife was employed there. The referee concluded that Attorney Mandelman failed to communicate with his client, in violation of SCR 20.32(3) and 20:1.4.

(11)   In 1986 a woman involved in an auto accident was approached by a man at the scene who referred her to Attorney Mandelman for representation. That man gave her one of Attorney Mandelman's business cards and the next day accompanied her to Attorney Mandelman's office, where she retained Attorney Mandelman to represent her. In 1987, a man who was involved in an auto accident took his car to a repair shop, where he met a man who referred him to Attorney Mandelman for representation. In 1989 a number of children injured on a school bus involved in an accident were transported to a hospital, where the parents of some of them were approached by a man who referred them to Attorney Mandelman for representation. In all of these cases, Attorney Mandelman had paid people to refer potential clients to him. In the case of the auto repair shop, he had represented the company for several years without compensation, had given cash to its owner

(h)   A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

and, as arranged by the owner, met with prospective clients at the shop. In addition, from time to time Attorney Mandelman gave money or other compensation to several clients for having referred new clients to him. The referee concluded that Attorney Mandelman's compensation of people to recommend his employment or as a reward for such recommendation violated SCR 20.09[14] and 20:7.2[15] and that his having requested persons or organizations to recommend his employment as a private practitioner violated SCR 20.09(3).[16]

---

[14]SCR 20.09 provides:

**Recommendation of professional employment.**

. . .

(2)   Except as permitted under sub. (3), a lawyer may not compensate or give anything of value to a person or organization to recommend or secure his or her employment by a client or as a reward for having made a recommendation resulting in his or her employment by a client.

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:7.2(b).

[15]SCR 20:7.2 provides:

**Advertising**

. . .

(b)   A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by this rule and may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization.

[16]SCR 20.09 provides:

**Recommendation of professional employment.**

. . .

(3)   A lawyer may not request a person or organization to recommend employment, as a private practitioner, of herself or himself, his or her partner or associate, except that the lawyer may request referrals from a lawyer referral service operated, sponsored or approved by a bar association representative of the general bar of the

(12) In 1986 Attorney Mandelman represented a couple injured in an auto accident. The husband died in May, 1987 while the matter was pending. The adjuster for the liability carrier wrote to Attorney Mandelman in February and May, 1987 and March, 1988 requesting initiation of settlement discussions and information concerning the status of the claims but Attorney Mandelman did not respond until March, 1988. After failing to return two subsequent calls from the adjuster, Attorney Mandelman met with him and discussed settlement. At no time did Attorney Mandelman advise the adjuster of the death of one of the claimants nor did he advise the remaining client of the settlement discussions.

The client received a release form from the adjuster and, at Attorney Mandelman's direction, signed the release on her own behalf and that of her deceased husband. Attorney Mandelman then sent the release to the adjuster with a cover letter stating that the releases for his "clients" were enclosed. Thereafter, the client was unsuccessful in numerous attempts to contact Attorney Mandelman regarding completion of the settlement.

The referee concluded that Attorney Mandelman neglected his client's legal matter, in violation of SCR 20.32(3) and 20:1.3,[17] failed to communicate with his client, in violation of SCR 20.32(3) and 20:1.4(c) and 20:1.2(a), and engaged in conduct involving misrepresentation, in violation of SCR 20:8.4(c).

geographical area in which the association exists and may pay its fees incident to referrals from the service.

The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:7.2.

[17]SCR 20:1.3 provides: "**Diligence**   A lawyer shall act with reasonable diligence and promptness in representing a client."

(13)  Attorney Mandelman maintained a bank account entitled "Clients Advance Account," from which he paid various expenses for and on behalf of clients. In March, 1988, he gave a check in the amount of $30 drawn on that account to the clerk of circuit court to pay a client's jury fees. The check was returned for insufficient funds (the account having a negative balance of $106.17) and as a result the client lost his right to a jury trial. Subsequent examination of that account disclosed that from January 1, 1987 through May, 1988, there were a total of 66 overdrafts written on that account and that the bank had sent written notice of each to Attorney Mandelman. The referee concluded that Attorney Mandelman's failure to responsibly manage that account constituted neglect of clients' legal matters and lack of reasonable diligence in representing his clients, in violation of SCR 20.32(3) and 20:1.3, and that he failed to exercise proper supervisory authority over employees of his law office regarding that account.

(14)  Attorney Mandelman was retained in March, 1987 to represent a man and his family injured in an auto accident. The clients' insurance carrier wrote to Attorney Mandelman in November, 1987 and March, May and November, 1988 requesting information and medical records concerning the accident. Attorney Mandelman supplied some information in May, 1988 but did not supply all of the requested records until after April, 1989. He also failed to communicate with his clients from June, 1987 through August, 1988 and from October, 1988 through April, 1989. During those periods, the clients made numerous unsuccessful attempts to contact him. The referee concluded that Attorney Mandelman neglected his client's legal matter, in violation of SCR 20.32(3) and 20:1.3, and failed to communi-

cate with his clients, in violation of SCR 20.32(3) and 20:1.4.

(15) In March, 1987, Attorney Mandelman contacted the insurance company of a woman who had been injured in an auto accident, notifying it that he had been retained to represent her. One year later he told the company that he was awaiting some of his client's medical bills and later said he had bills in his file he had never sent to the company. The client attempted to contact Attorney Mandelman on numerous occasions from September, 1987 until August 1988, when she filed a grievance with the Board. Attorney Mandelman did not return her telephone calls or advise her concerning the status of her case. The referee concluded that Attorney Mandelman neglected his client's legal matter and failed to communicate with her, in violation of SCR 20.32(3), 20:1.3 and 20:1.4.

(16) In 1987, in four separate matters unconnected with the foregoing, Attorney Mandelman failed to cooperate with the Board in its investigation of client grievances, failing to provide requested documentation for some 10 months in three of them and for 18 months in the fourth.

In making a recommendation for a five-month suspension of Attorney Mandelman's license to practice law as discipline for professional misconduct, the referee noted that the Board had sought a six-month suspension and that Attorney Mandelman had argued for a three-month suspension. The referee also noted that Attorney Mandelman attributed his problems to the high volume of business he generated and his failure to provide the personnel needed to assist him. The referee acknowledged Attorney Mandelman's statement that he had since employed sufficient staff with new facilities to manage the operation of his law office and will be able to

avoid problems that had arisen in the past. Characterizing Attorney Mandelman as "a capable lawyer [who] attracts a large number of clients," the referee stated:

> His personal habits are good and to his credit none of his admitted offenses if taken and considered separately would be viewed as serious misconduct. However, in this proceeding we are dealing with a pattern of a large number and repeated offenses over a period of several years. This can only indicate in my opinion a serious indifference by the Respondent of his legal obligations as a lawyer and warrants a period of suspension as appropriate discipline.

Appealing from the recommended five-month license suspension, the Board argued that Attorney Mandelman's 27 violations of the rules governing attorney professional conduct warrant more severe discipline. The Board asserted that, on the basis of prior similar cases, Attorney Mandelman's license should be suspended for a period of six months to one year, pointing out that in several of those cases, the court suspended an attorney's license for a period of at least six months and frequently longer for fewer violations of neglect of client matters, acting in the presence of conflict of interests and failing to cooperate in the Board's investigation.

In support of its position, the Board stressed that the serious nature of Attorney Mandelman's misconduct and its repetition exacerbate its gravity. In its response to Attorney Mandelman's attribution of his ethical difficulties to the high volume of work in his office, the Board contended that, rather than a mitigating factor, the high volume was arguably the direct result of his professional misconduct—soliciting representation, taking on conflicting representation and paying others for referrals.

The Board also objected to the referee's statement that· ". . . none of his admitted offenses if taken and considered separately would be viewed as serious misconduct," arguing that it is an inaccurate characterization of some of the neglect of client matters and the misrepresentations to the adjuster in the personal injury case and to the Board in two other cases. Likewise, the Board asserted, Attorney Mandelman's. solicitation of employment and the payment to others for referrals are not appropriately considered as less than serious. In particular, the Board pointed to his agent's solicitation of representation from the parents of children injured on the school bus, which occurred at the hospital while the parents were waiting for the children to be treated, and his direct solicitation of the woman injured in the auto accident while she was recuperating from her injuries.

In response to the Board's arguments, Attorney Mandelman took the position that the disciplinary recommendation of the referee, a highly respected member of the judiciary, should be given great weight. He urged the court not to overrule the referee and increase the recommended sanction.

A referee's recommendation for discipline is only a recommendation; it is for the court to determine the discipline to be imposed for an attorney's professional misconduct. In that regard, we view Attorney Mandelman's misconduct far more seriously than did the referee. While some of that misconduct might appropriately be considered minor infractions of the disciplinary rules, there is a significant number of other violations that establish a definite pattern of Attorney Mandelman's disregard of very basic ethical obligations of lawyers. In particular, on several occasions he imposed himself on strangers, seeking to represent them in per-

sonal injury claims even though it would create clear conflicts of interest. He also paid persons to obtain employment for him. Because of its serious nature and repetition over several years, the totality of Attorney Mandelman's misconduct warrants a suspension of his license to practice law for a considerable period. On the basis of his misconduct and in light of discipline imposed in prior cases, we determine that period to be one year.

IT IS ORDERED that the license of Michael D. Mandelman to practice law in Wisconsin is suspended for a period of one year, commencing November 12, 1990.

IT IS FURTHER ORDERED that within 60 days of the date of this order Michael D. Mandelman pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael D. Mandelman to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Michael D. Mandelman comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.