In the Matter of Disciplinary Proceedings Against
Michael D. Mandelman, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent-Cross-Appellant,

v.

Michael D. Mandelman,
Respondent-Appellant-Cross-Respondent.

Supreme Court

*Nos. 2003AP3348–D & 2004AP2633–D.*
*Oral argument April 6, 2006.—Decided May 17, 2006.*

2006 WI 45

(Also reported in 714 N.W.2d 512.)

160

For the respondent-appellant-cross-respondent there were briefs by *Daniel W. Hildebrand* and *DeWitt Ross & Stevens S.C.*, Madison, and oral argument by *Daniel W. Hildebrand.*

For the complainant-respondent-cross-appellant, there were briefs by *Robert G. Krohn* and *Roethe Krohn Pope LLP*, Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. Attorney Michael D. Mandelman has appealed that portion of a referee's report finding that the Office of Lawyer Regulation (OLR) proved by clear, satisfactory, and convincing evidence that Attorney Mandelman engaged in misconduct with respect to his representation of five clients. The OLR has cross-appealed the referee's findings and conclusion with respect to one of the counts as to which the referee found the OLR had not met its burden of proof.

¶ 2. We conclude that all of the referee's findings of fact, including those challenged by the OLR, are supported by satisfactory and convincing evidence. We also agree with the referee's conclusions of law that Attorney Mandelman engaged in professional misconduct. We further agree with the referee that a nine-month suspension of Attorney Mandelman's license to practice law is appropriate, and we also find it appropriate that Attorney Mandelman pay the full costs of the proceeding, which total $37,088.08 as of April 19, 2006.

¶ 3. Attorney Mandelman was admitted to practice law in Wisconsin in 1980 and practices in Milwaukee. In 1990 he received a one-year suspension for misconduct consisting of 27 violations of attorney ethics rules, including repeated neglect of client matters, failure to return client funds promptly, contacting per-

163

sons injured in an auto accident to obtain professional employment and representing multiple clients with adverse interests, settling a client's claim without authorization, misrepresenting to the Board of Attorneys Professional Responsibility (BAPR) (the predecessor to the OLR) work he had performed on a client's behalf, attempting to limit his potential malpractice liability to a client, failing to communicate with clients, compensating persons to recommend his employment or as a reward for employment recommendation, failing to responsibly manage his client trust account, and failing to cooperate with the BAPR in its investigation of client grievances. *See In re Disciplinary Proceedings Against Mandelman,* 158 Wis. 2d 1, 460 N.W.2d 749 (1990).

¶ 4. In 1994 Attorney Mandelman received an 18–month suspension, consecutive to the termination of the earlier suspension. When the first suspension period ended, Attorney Mandelman petitioned for reinstatement of his license. This court denied the petition on two grounds. First, it found that while the first suspension was pending, additional professional misconduct was discovered, including post-suspension violation of the rules governing the handling of Attorney Mandelman's client trust account. Second, this court found that during the reinstatement proceeding itself, Attorney Mandelman gave incomplete and evasive responses to the district committee and to BAPR. *See In re Disciplinary Proceedings Against Mandelman,* 182 Wis. 2d 583, 514 N.W.2d 11 (1994).

¶ 5. In 1999 Attorney Mandelman consented to the imposition of a private reprimand for misconduct consisting of indicating in pleadings that he represented a client when in fact he did not represent the client, thereby knowingly making a false statement of fact to a tribunal.

¶ 6. On December 12, 2003, the OLR filed a complaint alleging 13 counts of misconduct. As will be discussed in further detail herein, the misconduct alleged in the OLR's December 2003 complaint is closely related to the misconduct at issue in a previous disciplinary proceeding involving Attorney Mandelman's partner, Jeffrey A. Reitz, which resulted in this court's suspending Attorney Reitz's license to practice law for five months. *See In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, 279 Wis. 2d 550, 694 N.W.2d 894.

¶ 7. The first client matter detailed in the OLR's complaint involved Attorney Mandelman's representation of N.C. In March 1998 N.C. met with Attorney Mandelman to discuss a potential malpractice case against her former attorney, John Dade, who had represented N.C. in a custody dispute in 1995. N.C. told Attorney Mandelman she had lost custody of her child due to Attorney Dade's negligence. Attorney Mandelman verbally agreed to represent N.C. in a malpractice action against Dade for a contingent fee of one-third of any recovery. N.C. testified she did not sign a contingent fee agreement. Attorney Mandelman said while he always had written fee agreements in contingency matters and that he never forgot to sign one in any case, he could not produce a written fee contract with N.C.

¶ 8. In June 1998 Attorney Mandelman filed a lawsuit against Dade in Jefferson County Circuit Court and in Walworth County Circuit Court. The Jefferson County case was ultimately dismissed.

¶ 9. Attorney Mandelman also agreed to represent N.C. in filing a petition to reopen a custody dispute between N.C. and her child's father. The agreed fee for those services was $275 per hour. In September 1998

N.C. gave Attorney Mandelman a $3000 check as an advance in the custody matter. Attorney Mandelman deposited this check into his business account. At the time the check was deposited Attorney Mandelman had worked 6.5 hours in the custody matter, for which N.C. owed him $1787.50.

¶ 10. In February 1999 N.C. wrote to Attorney Mandelman saying she had lost faith in his representation and discharged him in the custody case. Despite having received N.C.'s discharge by fax, Attorney Mandelman continued to work on the case.

¶ 11. On March 1, 1999, Attorney Mandelman became law partners with Reitz, forming Reitz & Mandelman, LLC. Attorney Reitz had extensive experience preparing cases for trial, but had limited trial experience so his role in the new firm was to prepare cases for trial, while Attorney Mandelman's role was to handle settlement negotiations, depositions, and trials.

¶ 12. On April 5, 1999, N.C. wrote to Attorney Mandelman advising him that she had retained new counsel in the custody case and requesting that he immediately refund the $3000 she had paid him. Beginning on April 14, 1999, and on several occasions thereafter, N.C. sent communications to Attorney Mandelman asking for an itemized bill in the custody matter and also asking for a refund of her retainer.

¶ 13. On April 15, 1999, Reitz sent N.C. a letter advising that he would be her attorney in the malpractice case and that he would consult with Attorney Mandelman, whose function would be to handle court appearances and litigation.

¶ 14. On May 11, 1999, Dade's attorney sent Attorney Mandelman a first set of interrogatories and a

request for production of documents, which requested answers within 30 days. Reitz requested various extensions of time to respond. On July 2, 1999, Dade's attorney informed Reitz that if a response to discovery was not received by July 12, 1999, he would seek sanctions, including dismissal of N.C.'s case.

¶ 15. By July 16, 1999, Reitz mailed N.C.'s signed interrogatories to Dade's attorney. Although N.C. had signed the document it was not notarized as required by Wis. Stat. § 804.08(1)(b)(1999–2000). In addition, Reitz failed to respond to the request for production of documents.

¶ 16. On July 23, 1999, Dade's counsel filed a motion for dismissal of N.C.'s case based on her failure to respond to the discovery request. That motion was heard on August 19, 1999. The trial court denied the motion to dismiss, sanctioned N.C. for her discovery violations, and ordered that full and fair responses to Dade's first discovery be provided by August 30, 1999.

¶ 17. On or about August 30, 1999, Reitz responded to the first discovery request and forwarded the documents to Dade's counsel. Throughout the fall of 1999 N.C. wrote to Reitz requesting a refund of the fees she had paid in the custody matter.

¶ 18. On October 27, 1999, N.C. wrote to Reitz confirming an October 25 conversation regarding settlement discussions. N.C. said she did not want to settle the malpractice case, and she asked about taking depositions. On November 5, 1999, Dade's counsel wrote to Reitz asking that he adequately identify the experts he intended to call as witnesses by November 10. Reitz failed to respond to the letter.

¶ 19. On November 15, 1999, Reitz filed a motion to withdraw as N.C.'s attorney. On November 24 Dade's

167

counsel filed a letter objecting to Reitz's motion to withdraw, citing various discovery violations and failure to name experts.

¶ 20. Following additional requests from N.C., Reitz ultimately, on December 8, 1999, sent N.C. the balance of the $3000 attorney fees she had paid in the custody matter.

¶ 21. On December 10, 1999, the trial court denied Reitz's motion to withdraw in the malpractice case. On December 13 Dade's counsel again requested names of potential experts and set a deadline of December 17, 1999, for Reitz to provide them. Reitz failed to respond. On January 4, 2000, Dade's counsel filed a motion for dismissal for failure to follow court orders and for failure to file the necessary expert opinions. A hearing was scheduled on the motion for January 18, 2000.

¶ 22. Reitz scheduled a deposition of Dade to be conducted on the afternoon of January 14, 2000, at the Reitz & Mandelman law office. Attorney Mandelman normally conducted all depositions in cases handled by the firm, but he agreed to conduct Dade's deposition only if N.C. stated in writing that she had been satisfied with Attorney Mandelman's work and that she had specifically requested Attorney Mandelman to conduct the deposition. Shortly before the deposition was to begin, Reitz met with N.C. and had her sign the following document:

## RELEASE OF MICHAEL MANDELMAN

I, N.C., understand that Michael Mandelman has not recently been working on my case against John Dade and has agreed to do the deposition of John Dade January 14, 2000, only on condition that this release,

waiver and authorization is executed. I am providing Mr. Mandelman with information regarding my case this date and with questions that I wish him to ask of John Dade at the deposition. I hereby authorize Mr. Mandelman to conduct this deposition and release Michael D. Mandelman from any claims that I may have against him for whatever reason relating to any matters that he has worked on for me, hereby waiving the same..[sic] I have at this time no intention of filing any complaint, grievance, lawsuit or any other action with anybody against Michael D. Mandelman. I wish for Michael D. Mandelman to conduct this deposition of John Dade understand that this statement is necessary so that he can can [sic] proceed with my claim with the confidence necessary that he has my support in this matter.

¶ 23. Reitz informed N.C. that if she did not sign the document the deposition would not occur and N.C. would lose the case. Neither Attorney Mandelman nor Reitz advised N.C. in writing to obtain independent representation before signing the release. After N.C. signed the release, Attorney Mandelman conducted Dade's deposition.

¶ 24. In January 2000 there were unsuccessful settlement negotiations in the malpractice case. On the date of Dade's hearing on the motion to dismiss Reitz filed a brief in opposition to the motion, arguing that N.C.'s failure to submit summaries of her experts' opinions did not violate the scheduling order because she had no experts to testify on her behalf. The motion asked that N.C. be allowed to proceed without an expert witness.

¶ 25. Following the hearing, the trial court issued an order dismissing the case. The court found that N.C. could not succeed in proving the case without an expert witness, and she had failed to identify any expert who was willing to testify that Dade had been negligent. The

court dismissed the case with prejudice and awarded costs in favor of Dade. N.C. subsequently agreed to waive the right to appeal the trial court's decision. In return Dade agreed to waive his counsel's costs and any unpaid legal fees that N.C. still owed to him.

¶ 26. The OLR's complaint alleged the following counts of misconduct with respect to his representation of N.C.:

COUNT ONE—By failing to provide N.C. with a written fee agreement for the malpractice representation, Mandelman charged a contingent fee without a written fee agreement, in violation of SCR 20:1.5(c).[1]

COUNT TWO—By failing to deposit into his trust account the $3,000.00 check from N.C., Mandelman failed to hold in trust, separate from his own property an advance fee, in violation of former SCR 20:1.15(a).[2]

---

[1] SCR 20:1.5(c) provides: Fees.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[2] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(a) provided in relevant part: Safekeeping property.

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or

COUNT THREE—By failing to file a petition to reopen N.C.'s custody matter and by failing to pursue N.C.'s malpractice action against Dade in a timely manner, Mandelman failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[3]

COUNT FOUR—By continuing work on N.C.'s custody matter after she had discharged him, Mandelman failed to withdraw from the representation, in violation of SCR 20:1.16(a)(3).[4]

COUNT FIVE—By failing to respond to N.C.'s requests for an accounting of her $3,000.00 payment to him, Mandelman failed to render a full accounting regarding property in his possession, in violation of former SCR 20:1.15(b).[5]

COUNT SIX—By participating in having N.C. sign a document entitled "Release of Michael Mandelman" in

---

when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts . . . .

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.16(a)(3) provides that ". . . a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the lawyer is discharged."

[5] Former SCR 20:1.15(b) provided: Safekeeping property.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

which N.C. agreed to release Mandelman from any claims that she had against him, Mandelman made an agreement prospectively limiting his liability to a client who was not independently represented by counsel, in violation of SCR 20:1.8(h).[6]

¶ 27. Another client matter detailed in the OLR's complaint involved Attorney Mandelman's representation of C.K., who sustained severe injuries in July 1998 when his motorcycle was forced off the road by a pickup truck. In late January 1999 C.K. retained Attorney Mandelman to represent him in a claim against Germantown Mutual, the insurer of the pickup truck's driver.

¶ 28. In February and March 1999 Attorney Mandelman sought copies of C.K.'s medical records and bills from various treatment providers, along with wage loss verification. When Reitz became partners with Attorney Mandelman the C.K. file was assigned to Reitz. Between March 1999 and July 2000 Reitz performed certain legal services on behalf of C.K., including obtaining copies of treatment records and billings and engaging in settlement negotiations with Germantown Mutual.

¶ 29. In late July 2000 C.K. was frustrated about the slow pace of negotiations and told Attorney Mandelman in a phone conversation that he wanted a lawsuit to be commenced. On July 31, 2000, Attorney

---

[6] SCR 20:1.8(h) provides: Conflict of interest: prohibited transactions.

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

172

Mandelman wrote to C.K. and advised him he "would do everything possible to expedite this matter."

¶ 30. In November 2000 a $12,000 settlement offer was made to C.K. The offer was not accepted. Over the next six or seven weeks, settlement negotiations continued until Germantown Mutual reduced its settlement offer to $8000. That offer was refused on February 7, 2001.

¶ 31. C.K. was being pursued for payment of medical bills by a number of health care providers, including General Clinic, which served C.K. with a summons to appear in court on January 16, 2001. C.K. faxed the summons to Reitz and was assured that Reitz would take care of it.

¶ 32. On January 15, 2001, Reitz spoke with an attorney for General Clinic in an effort to arrange a delay of a judgment being taken. The attorney advised Reitz he would take judgment, but would delay docketing it for 30 days to give C.K. time to make arrangements to pay. Reitz did not relay this conversation to C.K. After hearing nothing from Reitz for 45 days, General Clinic commenced a garnishment action against C.K. Between February and May 2001 neither Reitz nor Attorney Mandelman took any substantive effort to advance C.K.'s personal injury case towards suit. In early June 2001 Reitz made a final, unsuccessful effort to mediate the case.

¶ 33. On July 17, 2001, one day before the statute of limitations was to run, Reitz filed a summons and complaint in Shawano County Circuit Court. The defendants filed an answer on September 7, 2001. No substantive action was taken by Attorney Mandelman or Reitz for the balance of 2001, with the exception of receiving and responding to interrogatories filed by the defendants.

¶ 34. In March 2002 C.K. called the court to check on the status of his case. The clerk informed him that if a status conference was not arranged soon the judge would dismiss the case. C.K. contacted Reitz with that information and Reitz secured a May 1, 2002, status conference date. Subsequently, C.K. sought other attorneys to take over the case but could find no one willing to share the fee with Attorneys Reitz and Mandelman. For that reason C.K. did not terminate Reitz and Mandelman's services. C.K.'s case was settled shortly before a February 2003 trial date.

¶ 35. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Mandelman's representation of C.K.:

> COUNT EIGHT[7]—By failing to pursue C.K.'s personal injury claim in a timely manner, as C.K.'s lawyer and as a partner in the firm, Mandelman failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3.
>
> COUNT NINE—By failing to respond to C.K.'s requests for information, Mandelman failed to ensure that a client was kept reasonably informed about the status of a matter and further failed to promptly comply with reasonable requests for information from a client, in violation of SCR 20:1.4(a).[8] Mandelman is responsible for a violation of SCR 20:1.4(a) by reason of

---

[7] Count Seven of the complaint involved Attorney Mandelman's representation of a client named J.S. The OLR subsequently voluntarily dismissed this count so it will not be discussed in further detail.

[8] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

his own conduct and based upon the joint responsibility to represent C.K. as partners in a law firm providing legal services under SCR 20:5.1(c)(2).[9]

■

¶ 36. The next client matter detailed in the OLR's complaint involved Attorney Mandelman's representation of T.O., who injured his back in October 1999 when, while stopped at a traffic signal, he leapt off his motorcycle to avoid being run over by a truck that was backing up toward him. T.O. retained an attorney to represent him in a personal injury action. That attorney secured a $5000 settlement offer from the truck driver and his insurer, but T.O. rejected the offer. That attorney filed suit in Waushara County Circuit Court against the truck driver, the truck driver's employer, and Sentry Insurance. The attorney did not serve the defendants in the case because shortly after it was filed in October 2000 T.O. met with Attorney Mandelman and retained him to take over the case.

¶ 37. Reitz prepared, but never filed with the court, a formal notice of retainer on behalf of T.O. No formal substitution of attorneys was prepared on behalf of T.O. Attorneys Mandelman and Reitz received T.O.'s file from the other attorney in early November 2000. They delayed service of the summons and complaint to give them a chance to fully review the file.

---

[9] SCR 20:5.1(c)(2) provides: Responsibilities of a partner or supervisory lawyer.

 (c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

 (2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

¶ 38. On December 27, 2000, the circuit court sent a 20–day dismissal order to the first attorney and to the defendant, indicating that the matter would be dismissed without prejudice within 20 days if certificates of service were not then on file. Reitz filed certificates of service with the court on January 2, 2001.

¶ 39. The defendants' answers to the complaint were due in mid-February 2001. No answers were filed, no appearances were made by any attorneys on behalf of the defendants, and no extensions of time to answer were filed or documented. On March 29, 2001, the circuit court sent a letter to the first attorney and to Reitz, indicating that no substitution of attorneys had been filed, nor any scheduling initiated. The court asked for a response within 30 days.

¶ 40. On April 6, 2001, the first attorney responded, copying Reitz, and advised the court it was up to Reitz to prepare and file the substitution stipulation and order. Reitz neither responded to the court's letter nor to the first attorney's letter. On May 2, 2001, T.O.'s case was dismissed without prejudice for failure to prosecute. A copy of the dismissal order was sent to Reitz.

¶ 41. The OLR's complaint alleged the following count of misconduct with respect to Attorney Mandelman's representation of T.O.:

> COUNT TEN—By failing to file in court a notice of substitution, which resulted in the dismissal of T.O.'s case, Mandelman failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3. Mandelman is responsible for a violation of SCR 20:1.3 by reason of his own conduct and based upon the joint responsibility to represent T.O. as partners in a law firm providing legal services under SCR 20:5.1(c)(2).

¶ 42. Another client matter detailed in the OLR's complaint involved Attorney Mandelman's representation of J.D. On November 20, 2001, J.D. retained Attorney Mandelman to represent her in an employment claim against a former employer, the law firm of Daniel Kondos, in connection with a sexual harassment matter. In November and December 2001 Attorney Mandelman negotiated with counsel for Kondos's law firm regarding a possible settlement of the claim.

¶ 43. On December 20, 2001, J.D. filed a complaint against Kondos with the Wisconsin Equal Rights Division (ERD) and the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment. J.D. prepared and typed the complaint under Attorney Mandelman's direct supervision.

¶ 44. On January 16, 2002, an officer of the ERD advised J.D. that he had sent her complaint to Kondos. He further advised that if J.D. was unable to reach a compromise with Kondos, he would investigate her complaint. A copy of the letter was sent to Reitz. On or about January 18, 2002, J.D. telephoned Attorney Mandelman requesting some explanation about the letter and the materials she had received from ERD. Attorney Mandelman's response was vague and of little assistance to J.D.

¶ 45. On January 25, 2002, counsel for Kondos filed with ERD a narrative response to J.D.'s complaint and an answer and affirmative defenses. A copy was sent to Reitz. The answer denied J.D.'s allegations and raised various affirmative defenses, including the defense that J.D.'s claim was barred due to her failure to file it within the 300–day statute of limitations. On or about January 26, 2002, J.D. asked Attorney Mandelman how he intended to respond to the Kondos submis-

sions. Attorney Mandelman indicated he did not know how to respond and would have to think about it. Attorney Mandelman neither responded to Kondos's narrative response, nor did he respond to Kondos's answers and affirmative defenses.

¶ 46. On February 14, 2002, ERD sent a letter addressed to Reitz indicating it was proceeding with an investigation of J.D.'s claim and enclosing a copy of the Kondos response. ERD informed Reitz it would be necessary for J.D. to provide a written rebuttal to Kondos's response by February 25, 2002. ERD also indicated it would assume J.D. agreed with all of the Kondos points if she did not dispute them in her rebuttal. ERD requested that J.D. have her witnesses telephone ERD by February 25. Attorney Mandelman failed to inform J.D. of ERD's requests.

¶ 47. On March 13, 2002, ERD wrote to Reitz and advised him they had not received a response to their February 14 letter and that an initial determination would be issued based on the facts in ERD's file. Neither Attorney Mandelman nor Reitz responded to ERD's letter.

¶ 48. On April 8, 2002, ERD issued three orders with respect to J.D.'s claim. The orders were sent to J.D. with a copy to Reitz. Among other things, ERD dismissed the claim against the employee of the Kondos law firm whom J.D. accused of sexual harassment. ERD also found that a portion of J.D.'s complaint did not meet the timeliness requirements of the Wisconsin Fair Employment Law, which required a complaint to be filed within 300 days of the alleged act of discrimination. In addition, ERD found no probable cause with regard to J.D.'s claim and dismissed the complaint. The decision stated that J.D. failed to refute Kondos's response and failed to have her witnesses telephone the

investigator on her behalf. The decision also stated that the investigation of J.D.'s complaint revealed that there was no information to support her claim. J.D. had 30 days to appeal this determination.

¶ 49. J.D. received the ERD decision. From discussions with Attorney Mandelman she understood that Attorney Mandelman would take care of the pending ERD matters, including the appeal. J.D. contacted ERD around May 13, 2002, and learned that the file had been closed on May 8 because the agency had never received a timely appeal. That same day J.D. contacted Attorney Mandelman about the status of the case and Attorney Mandelman said he knew nothing about the dismissal and that Reitz was working on the case and would keep her informed.

¶ 50. J.D. spoke with Reitz on or about May 14, 2002, and he agreed to fax her the work done on the case. After receiving nothing from Reitz, J.D. contacted Attorney Mandelman on May 15, inquiring about Reitz's work. She received no response.

¶ 51. On May 16, 2002, J.D. wrote to Attorney Mandelman expressing concern about her loss of the right to appeal and asking how the problem was to be handled. She received no response. On May 17 Attorney Mandelman acknowledged he had done nothing on the case and said he would telephone Kondos's counsel to try to reach a settlement.

¶ 52. On May 21, 2002, Attorney Mandelman advised J.D. that Kondos had agreed to pay $3000 to settle the claim. J.D. asked Attorney Mandelman to make a $10,000 counter-offer. The offer was made and Kondos refused it. In June 2002 Attorney Mandelman advised J.D. to settle the case and told her his fee would be $250. Attorney Mandelman said he would call J.D. back regarding the settlement, but he did not do so.

¶ 53. By letter dated June 18, 2002, EEOC sent J.D. a document entitled "Dismissal and Notice of Rights." The letter informed J.D. that EEOC had upheld ERD's decision but that she had the right to sue Kondos in federal court within 90 days. Attorney Mandelman never advised J.D. that she had the right to sue in federal court. On June 26, 2002, J.D. wrote to Attorney Mandelman and discharged him.

¶ 54. The OLR's complaint alleged the following count of misconduct with respect to Attorney Mandelman's representation of J.D.:

> COUNT ELEVEN—By failing to make reasonable efforts to ensure that his firm had in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct, and by the firm's failure to file a response to Kondos' Answer and Affirmative Defenses, by failing to submit a rebuttal to Kondos' response, and by failing to ensure that J.D.'s witnesses telephoned ERD's investigator, Mandelman failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3 and SCR 20:5.1(a).[10]

¶ 55. The final client matter detailed in the OLR's complaint involved Attorney Mandelman's representation of L.K., who was involved in a five-car collision on I-94 in September 1999. On September 22 L.K. retained Attorney Mandelman to represent her in the personal injury claim resulting from the accident. Following the accident L.K. treated with a chiropractor, Dr. Gregory

---

[10] SCR 20:5.1(a) provides that "[a] partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct."

Daniels. The treatment lasted until January 31, 2000, at which time Dr. Daniels released L.K. from his care.

¶ 56. Between February and May 2000 Reitz collected L.K.'s medical records, bills, and wage loss information. On May 16, 2000, Reitz submitted the last of the bills and records to American Country Insurance Company and made a settlement demand. Between May 17 and October 20, 2000, no substantive action was taken by either Attorneys Mandelman or Reitz with regard to the case. Between October 21, 2000, and January 4, 2001, Attorney Mandelman pursued settlement negotiations with American Country. American Country's top offer was $17,000, which was rejected.

¶ 57. L.K. discussed her claim with Attorney Mandelman on January 3, 2001, and told him she wanted him to file suit immediately. Attorney Mandelman told her he would proceed with the lawsuit. Attorney Mandelman confirmed this conversation in a letter dated January 4, 2001, in which he promised to "immediately place this matter in suit."

¶ 58. Between January 4, 2001, and March 7, 2001, L.K. made numerous phone calls to Attorneys Mandelman and Reitz to get a status report on her case. Neither Attorney Mandelman nor Reitz returned her calls. On March 7, 2001, L.K. spoke with Reitz, who told her he would file the lawsuit and serve the summons and complaint. The same day Reitz prepared a summons and complaint but did not file them with the court.

¶ 59. On March 29, 2001, Reitz sent a copy of the summons and complaint to L.K., saying "[p]lease find enclosed a copy of the Summons and Complaint for your lawsuit." There was no indication that the documents Reitz sent L.K. were a draft.

¶ 60. L.K. believed the complaint had been filed and, after waiting 45 days for the defendants to answer the complaint, contacted Reitz by phone on May 2, 2001. Reitz told L.K. he would set a date with the judge to arbitrate her claim. On June 5, 2001, L.K. telephoned Reitz, who told her no court date had yet been scheduled and that she should call him back. On June 22, 2001, L.K. again telephoned Reitz, who informed her the court would most likely schedule a court date in two to six weeks.

¶ 61. On June 9, 2001, L.K. met with Reitz and told him she would not accept a $17,000 offer from the insurance company. She repeated her desire to litigate the claim. Between May and September 2001 Reitz pressed American Country to mediate the case without having to actually commence the action. By September 23, 2001, it was apparent that American Country did not want to increase its settlement offer or mediate, so on that date a new, but substantively identical summons and complaint was prepared for filing. Reitz failed to file the new summons and complaint. On or about December 17, 2001, L.K. retained a different law firm to pursue her case when neither Attorney Mandelman nor Reitz had filed her lawsuit.

¶ 62. The OLR's complaint alleged the following count of misconduct with respect to Attorney Mandelman's representation of L.K.:

> COUNT THIRTEEN—By failing to pursue L.K.'s personal injury claim in a timely manner, Mandelman failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3. Mandelman is responsible for a violation of SCR 20:1.3 by reason of his own conduct and based upon the joint responsibility to represent L.K. as partners in a law firm providing legal services under SCR 20:5.1(c)(2).

182

¶ 63. In October 2004 the OLR filed a second complaint alleging that by failing to file income tax returns, by filing untimely income tax returns, and by failing to pay income taxes when due, Attorney Mandelman violated a standard of conduct for attorneys, contrary to SCR 20:8.4(f).[11]

¶ 64. John A. Fiorenza was appointed referee in the consolidated cases. A hearing was conducted over the course of eight days. The referee filed his report and recommendation on August 19, 2005. The referee found that the OLR had met its burden of proof with respect to counts one, three, six, eight, nine, ten, eleven, twelve, and thirteen of the December 2003 complaint. The referee's report also noted that in July 2005 Attorney Mandelman's attorney had informed the referee that Attorney Mandelman admitted the allegations in the October 2004 complaint dealing with failure to file income tax returns and failure to pay income taxes.

¶ 65. Of particular significance to Attorney Mandelman's appeal is the professional relationship between Attorneys Reitz and Mandelman and their clients' perception of that relationship. The referee stated:

> There has been testimony given by many of the clients of Attorney Mandelman that they retain Mr. Mandelman and either at the initial conference with Mr. Mandelman or some time thereafter, it was explained that Attorney Reitz would be assisting Mandelman on the case. At times the clients were told that Mr.

---

[11] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

Reitz would do the "work-up" on the case and that Mr. Mandelman would be taking the Depositions and appearing in Court and trying the case. Other clients testified that they never met Mr. Reitz in person but at times they would talk to him on the phone or see some letters that were written by Mr. Reitz.

There was no testimony that indicated that the clients were told or knew that the responsibilities of each of these attorneys were separate and distinct from the other attorney. Mr. Mandelman never informed any of his clients that he would not be responsible for any actions that were taken by Mr. Reitz.

¶ 66. The OLR had requested a one-year suspension of Attorney Mandelman's license. The referee concluded that a nine-month suspension was appropriate. The referee also recommended that Attorney Mandelman be required to pay the costs of the proceeding.

¶ 67. Attorney Mandelman has appealed the referee's conclusions of law regarding the allegations in the OLR's December 2003 complaint with respect to counts one, six, eight, nine, ten, eleven, twelve, and thirteen. Attorney Mandelman vigorously disputes that he is responsible for actions taken by Reitz. Attorney Mandelman asserts that SCR 20:5.1(c)(2) states a rule of accessorial liability rather than vicarious liability and requires that a partner or supervising lawyer know of conduct by a partner or subordinate at a time when adverse consequences to the client can be avoided and, in the face of that knowledge, fails to take remedial action. Attorney Mandelman argues that the referee's analysis of SCR 20:5.1(c)(2) in effect applied a respondeat superior theory which does not apply in attorney disciplinary proceedings.

¶ 68. Attorney Mandelman argues that the record is clear that he had no direct supervisory authority over

Reitz and that the two were equal partners. He contends that the erroneous work performed on behalf of the various clients as detailed in the OLR's complaint was wholly within Reitz's realm of professional responsibility. Attorney Mandelman says, "[u]nder the OLR's theory, Mandelman should have done all his own work and Reitz's too." Attorney Mandelman contends the mere fact that he spoke to the various clients at different times does not obviate the fact that Reitz remained responsible for handling their cases.

¶ 69. Attorney Mandelman also takes issue with the referee's finding of fact that he failed to provide a written contingent fee agreement in N.C.'s malpractice case. He says the facts of record establish that he used written fee agreements in thousands of cases and in this single lone instance he was simply unable to locate the written contingent fee agreement and there is nothing to prove that he did not have N.C. sign an agreement "other than the recall of a manipulative complainant."

¶ 70. With respect to the referee's finding that Attorney Mandelman entered into an agreement with N.C. prospectively limiting his liability for malpractice, Attorney Mandelman claims he did not know what type of document Reitz prepared; all Attorney Mandelman wanted was an "acknowledgment" from N.C. that she was "happy" with what Attorney Mandelman had done; and Attorney Mandelman never looked at the document before proceeding with the Dade deposition.

¶ 71. Attorney Mandelman also contends that the referee's recommendation for a nine-month license suspension is excessive. He asserts that the five-month license suspension imposed against Reitz "sets a reasonable upper-end standard for discipline in this case."

¶ 72. Attorney Mandelman also argues that the costs of the proceeding should be prorated based on the OLR's failure to prove its entire case.

¶ 73. The OLR argues that there is sufficient proof that Attorney Mandelman violated SCR 20:5.1(c)(2). In support of this argument the OLR says in each of the subject cases both Attorneys Mandelman and Reitz performed services for the same client on the same case; Reitz & Mandelman LLC was essentially a two-lawyer operation; each client considered Mandelman or both Mandelman and Reitz to be their attorneys; while Attorney Mandelman claims he did not supervise Reitz, it is clear that from time to time Attorney Mandelman did direct Reitz to perform certain activities and then failed to follow up on whether Reitz had done so; Attorneys Mandelman and Reitz had apparent comparable managerial authority in the law firm as to each particular file; all files were readily accessible to both attorneys; and Attorney Mandelman has acknowledged that there was nothing to prevent him from checking on the status of a file. The OLR also contends that Attorney Mandelman had ample notice of client complaints and ample time to take measures to rectify problems but failed to do so.

¶ 74. The OLR also asserts that Attorney Mandelman bears the burden of contradicting N.C.'s testimony that there was no written contingent fee in the malpractice case, and Attorney Mandelman has failed to produce such an agreement. The OLR says the agreement prospectively limiting Attorney Mandelman's liability to N.C. is perhaps the most serious of all the misconduct counts, and it says it is the most dramatic example of Attorney Mandelman's lack of credibility. The OLR says the suggestion that Reitz mistakenly incorporated release language into the document when

Attorney Mandelman told Reitz he simply wanted an acknowledgment that N.C. was "happy" with his representation is simply not credible. The OLR says Attorney Mandelman's claim that he was not aware of the specific content of the release is similarly incredible. The OLR says Attorney Mandelman knew that N.C. was a difficult client and that she was angry at him. He asked Reitz to draft the document and assured himself that the document had been signed before he took the Dade deposition. The OLR says the document was presumably in the file over which Attorney Mandelman had control, and those circumstances necessarily lead to the inference that Attorney Mandelman did know of the document's content.

¶ 75. The OLR has cross-appealed the referee's conclusion that Attorney Mandelman's failure to deposit N.C.'s $3000 retainer check into his trust account did not violate former SCR 20:1.15(a). While the OLR acknowledges that the conduct in this case predates the July 2004 rule changes which clearly would have required placing the retainer check into a trust account, it asserts the rule in Wisconsin always was that such payments should have been placed in an attorney's client trust account.

¶ 76. Attorney Mandelman argues that the referee correctly concluded he was not required to deposit N.C.'s $3000 payment of advance fees into his trust account. He notes that Attorney Richard Cayo testified as an expert witness on Attorney Mandelman's behalf and opined that, during the relevant time period, it was a very open question among legal ethics professionals what treatment had to be afforded to retainers. Attorney Mandelman says if the issue was as clear as the OLR contends, there would have been no reason for this court to create SCR 20:1.15(b)(4) to specifically provide

that advance payment of fees and costs must be deposited into a lawyer's trust account.

¶ 77. The OLR argues that Attorney Mandelman's extensive prior disciplinary history warrants a minimum nine-month license suspension. The OLR says "Mandelman has not gotten the message. Prior discipline has not been effective in preventing a repeat of the same type of unprofessional conduct."

¶ 78. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. After careful review of the record, we conclude that the referee's findings of fact are not clearly erroneous, and we adopt them. We also agree with the conclusions of law that flow from the referee's findings of fact, except we do not agree that, in his handling of the C.K. matter, Attorney Mandelman violated SCR 20:5.1(c)(2).

¶ 79. We find that the record supports all of the referee's findings and conclusions with respect to Attorney Mandelman's handling of the N.C. matter. We further find that Attorney Mandelman failed to act with reasonable diligence and promptness in his representation of the various clients, as alleged in the OLR's complaint. We also find that he failed to keep C.K. reasonably informed about the status of a matter and failed to promptly comply with reasonable requests for information received from C.K.

¶ 80. The referee concluded that Attorney Mandelman violated SCR 20:5.1(c)(2) with respect to his

handling of the C.K., T.O. and L.K. matters. We agree with the referee's analysis as to the T.O. and L.K. matters but not as to C.K.'s case.

¶ 81. SCR 20:5.1(c)(2) provides that a lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if the lawyer is a partner in the law firm in which the other lawyer practices and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. The preamble to the rules of professional conduct for attorneys provides: " 'Knowingly,' 'Known,' or 'Knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."

¶ 82. In addition, the comment to SCR 20:5.1 states:

> Paragraph (c)(2) defines the duty of a lawyer having direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners of a private firm have at least indirect responsibility for all work being done by the firm, while a partner in charge of a particular matter ordinarily has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner would depend on the immediacy of the partner's involvement and the seriousness of the misconduct. The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. . . .

Contrary to Attorney Mandelman's assertion that a finding that he violated SCR 20:5.1(c)(2) is tantamount to holding him responsible for matters over which Reitz had exclusive control, we find that the record demon-

189

strates that Attorney Mandelman had direct responsibility for the T.O. and L.K. cases and he had actual knowledge that the matters were not being handled with reasonable diligence but failed to take appropriate remedial action.

¶ 83. T.O. retained Attorney Mandelman to take over his personal injury case in which a different attorney had already filed a lawsuit in circuit court but had not yet served the summons and complaint. After receiving the file from the other attorney, Attorneys Mandelman and Reitz delayed service of the summons and complaint. Although service was eventually effectuated, no substitution of attorneys was ever filed, no scheduling was initiated, and the case was ultimately dismissed for failure to prosecute. We agree with the referee that the evidence supports a finding that Attorney Mandelman knew that T.O.'s case was not being handled with reasonable diligence and promptness by Reitz and failed to take reasonable remedial action.

¶ 84. We further agree with the referee's findings and conclusion that Attorney Mandelman violated SCR 20:5.1(c)(2) with respect to his handling of the L.K. matter. L.K. retained Attorney Mandelman to represent her in her personal injury case. Although Attorney Mandelman claims Reitz then took over responsibility for the file, the record reveals that L.K. told Attorney Mandelman she wanted him to file her lawsuit immediately, and Attorney Mandelman promised he would do so. He followed this promise up with a letter. L.K. subsequently made numerous phone calls to both Attorneys Mandelman and Reitz trying to get a status report on her case. There is ample evidence to support a finding that Attorney Mandelman knew L.K.'s case was not being handled with reasonable diligence and promptness and failed to take reasonable remedial action.

¶ 85. We disagree with the referee's conclusion that Attorney Mandelman violated SCR 20:5.1(c)(2) with respect to the handling of the General Clinic collection action filed against C.K. Although C.K. did retain Attorney Mandelman to represent him in his personal injury claim, the record indicates that C.K. dealt exclusively with Reitz on the collection action, and it was Reitz who assured C.K. he would take care of that matter and it was Reitz who failed to do so. Unlike the T.O. and L.K. matters, the record does not support a finding that Attorney Mandelman knew of Reitz's failure to take care of the C.K. collection matter at a time when its consequences could have been avoided or mitigated.

¶ 86. After careful review of the record, we reject the arguments made in the OLR's cross-appeal, and we affirm the referee's findings of fact which led to his conclusions of law that the OLR failed to meet its burden of proof with respect to Attorney Mandelman's failure to deposit N.C.'s $3000 retainer check into his trust account. As Attorney Mandelman's expert witness opined, at the time in question it was unclear whether such a retainer had to be placed in a client trust account.

¶ 87. As to the appropriate sanction to be imposed, we agree with the referee that a nine-month suspension of Attorney Mandelman's license to practice law is appropriate. While Attorney Mandelman argues that the five-month suspension imposed as a result of Reitz's misconduct should be the upper-end standard for discipline here, we note that Attorney Mandelman has been found to have committed more counts of misconduct than Reitz and, unlike Reitz, he has been disciplined on

three prior occasions. Under the circumstances we deem a nine-month suspension appropriate.

¶ 88. We also conclude that Attorney Mandelman should pay the full costs of the proceeding totaling $37,088.08. Although Attorney Mandelman argues that because the referee found that the OLR failed to meet its burden of proof with respect to some of the counts alleged in the December 2003 complaint, this court should exercise its discretion to award something less than full costs, we decline to depart from the general practice of imposing the full costs on a disciplined lawyer.

¶ 89. IT IS ORDERED that the license of Michael D. Mandelman to practice law in Wisconsin is suspended for nine months commencing June 21, 2006, as discipline for his professional misconduct.

¶ 90. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Michael D. Mandelman pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael D. Mandelman to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 91. IT IS FURTHER ORDERED that Michael D. Mandelman comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.