In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael D. MANDELMAN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Michael D. MANDELMAN, Respondent.

Supreme Court

*No. 2007AP2653–D. Decided May 29, 2009.*

2009 WI 40

(Also reported in 765 N.W.2d 788.)

¶ 1. PER CURIAM. We review the recommendation of the referee, Jonathan V. Goodman, that Attorney

Michael D. Mandelman's license to practice law in Wisconsin be suspended for one year. The Office of Lawyer Regulation (OLR) filed a disciplinary complaint alleging six counts of misconduct arising from three separate matters. The OLR and Attorney Mandelman stipulated to Attorney Mandelman's no contest plea to the allegations of the disciplinary complaint.

¶ 2. We conclude the seriousness of Attorney Mandelman's misconduct warrants a suspension of his license for a period of one year, commencing the date of this decision. We also impose full costs of the disciplinary proceeding and require restitution as determined in the referee's report.

¶ 3. Attorney Mandelman's disciplinary history consists of the following:

- A one-year suspension for 27 rules violations, including neglect of client matters, failure to return client files promptly, contacting injured persons, representing multiple clients with adverse interests, settling a client's claim without authorization, misrepresentations to Board of Attorneys Professional Responsibility (BAPR), attempting to limit potential malpractice liability, and trust account violations. *In re Disciplinary Proceedings Against Mandelman,* 158 Wis. 2d 1, 460 N.W.2d 749 (1990).

- An 18–month suspension, retroactive to the termination of the earlier suspension, for violating various ethics rules. *In re Disciplinary Proceedings Against Mandelman,* 182 Wis. 2d 583, 514 N.W.2d 11 (1994). This decision also denied his petition for reinstatement because while his suspension was pending, additional professional misconduct was discovered, including post-suspension trust account violations and, during reinstatement proceedings, he gave incomplete and evasive information to BAPR.

- Reinstatement of Attorney Mandelman's license to practice law with the condition of periodic reporting to the board of his dealings with client funds and his trust account. *In re Reinstatement of Mandelman,* 197 Wis. 2d 435, 541 N.W.2d 480 (1995).

- A private reprimand for misconduct consisting of a false statement to a tribunal, contrary to former SCR 20:3.3(a). Private Reprimand of Michael Mandelman, 1999–18.

- A nine-month suspension effective July 1, 2006, for violations of SCR 20:1.5(c), SCR 20:5.1(c)(2), SCR 20:1.16(a)(3), former SCR 20:1.15(b), SCR 20:1.8(h), SCR 20:1.3, and SCR 20:8.4(f). *In re Disciplinary Proceedings Against Mandelman,* 2006 WI 45, 290 Wis. 2d 158, 714 N.W.2d 512. Attorney Mandelman's license to practice law remains under suspension as a result of the 2006 disciplinary proceeding.

¶ 4. In the current proceedings, consistent with the allegations of the disciplinary complaint and the parties' stipulation, the referee found six counts of misconduct in the following three matters.

## I. S.M. CLIENT MATTER (COUNTS 1 THROUGH 3)

¶ 5. In October 2000 S.M. suffered injuries in an automobile accident. He retained Attorney G.C. who reached an agreement with the adverse driver's insurance carrier for policy limits of $25,000. S.M. also sought recovery from his own underinsurance carrier, Hastings Mutual. Without notifying Attorney G.C., S.M. retained the law firm of Reitz and Mandelman, LLC. Subsequently, Attorney Mandelman's partner, Jeffrey Reitz, advised Attorney G.C. that he had been discharged as S.M.'s attorney.

¶ 6. Attorney G.C., however, had already received the $25,000 settlement check and had determined the amount of the outstanding medical bills to be paid from

217

the proceeds. He offered to disburse the check proceeds through his trust account. Attorney Mandelman declined and, instead, reached an agreement with Attorney G.C. to reduce his one-fourth contingency fee to $5,000 and arrange for the insurance company to reissue the check to the Reitz and Mandelman law firm trust account.

¶ 7.   In June 2002 the settlement check was deposited in the Reitz and Mandelman, LLC, trust account. Proceeds were issued as follows:  $10,000 to S.M., $5,000 along with $293.56 for costs to Attorney G.C., and $1,250 to Reitz and Mandelman, LLC. This distribution left $8,456.44 to cover medical bills, which were outstanding in the sum of $8,045.66.

¶ 8.   Attorney Mandelman's office had performed no work to obtain the insurance settlement check but nonetheless paid itself a $1,250 fee, reflecting the difference between the amount that Attorney G.C. would have received under his one-fourth contingency agreement with S.M. and the $5,000 fee Attorney G.C. agreed to accept. Attorney Mandelman provided no information about the disbursements when he sent S.M. his check.

¶ 9.   In October 2003 Attorney Mandelman sent a demand letter to Hastings Mutual seeking $150,000 policy limits. Hastings Mutual responded with a $14,000 offer. After more than two years, no progress had been made toward settlement. Although S.M. asked Attorney Mandelman to file suit on several occasions, Attorney Mandelman failed to do so. In March 2004 Attorney Mandelman wrote to S.M. indicating that he was working diligently on the matter.

¶ 10.   After S.M.'s repeated demands, Attorney Mandelman shipped a box of documents to S.M. in June

2006, with a cover letter indicating a $42,000 settlement could be reached. Attorney Mandelman provided no information regarding his impending license suspension and failed to advise that $8,456.44 of S.M.'s funds remained in Attorney Mandelman's trust account. S.M. had previously informed Attorney Mandelman that S.M. required surgery due to the spinal injuries suffered in the accident, but he lacked funds to cover the medical expense.

¶ 11.  In July 2006 S.M. and his wife filed a grievance with the OLR and a claim with the Wisconsin Lawyers' Fund for Client Protection regarding the $25,000 settlement check for which they had received no accounting. Eventually, after hiring another attorney, S.M. received the $8,456.44 remaining in Attorney Mandelman's trust account.

¶ 12.  The referee concluded the S.M. client matter gave rise to three violations:

- Count one:  By collecting the $1,250 fee without performing any work, Attorney Mandelman violated former SCR 20:1.5(a),[1] which requires that a lawyer's fee be reasonable.

---

[1] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the Wisconsin Supreme Court Rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.5(a) provided as follows:

A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

- Count two: By failing to give S.M. a written settlement statement showing the actual or intended disbursements for the $25,000 settlement and retaining $8,456.44 for more than four years, Attorney Mandelman violated former SCR 20:1.15(b)[2] and former SCR 20:1.15(d),[3] which require prompt disbursement of client funds and full accounting upon request; and

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[2] Former SCR 20:1.15(b) (2003–04) provided:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[3] Former SCR 20:1.15(d) (effective July 1, 2004, through June 30, 2007) provided: Prompt notice and delivery of property.

- Count three: By failing to discuss S.M.'s case and by advising that he had been diligently working on his case when in fact he had not, Attorney Mandelman violated SCR 20:1.4(b),[4] which requires a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions.

¶ 13. The referee also found restitution of $1,250 was owed to S.M.

## II. THE DR. G.D. MATTER (COUNT 4)

¶ 14. Dr. G.D. is a chiropractor to whom Attorney Mandelman referred personal injury clients for treat-

(1) **Notice and disbursement.** Upon receiving funds or other property in which a client·has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) **Accounting.** Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.

(3) **Disputes regarding trust property.** When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).

[4] SCR 20:1.4(b) provides a lawyer shall "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

221

ment. In 15 client cases, Attorney Mandelman (or in one case, his law partner) entered into a doctor's lien in which the law firm and the client agreed to pay for Dr. G.D.'s chiropractic services from the client's settlement proceeds. In each of the 15 cases, Attorney Mandelman obtained a settlement on behalf of the client, but failed to send Dr. G.D. written notice when the settlement proceeds were received and deposited in Attorney Mandelman's firm trust account.

¶ 15.   Three cases are representative. For example, in one instance involving client P.D., the firm received a $10,000 settlement in April 1999. Dr. G.D. was owed $2,211.72. Only $426.75 was retained in the firm's trust account, which remained on deposit for seven years without payment to Dr. G.D. In another case involving client A.R., Dr. G.D. was owed $977.40. A $10,000 settlement check was received and, after payment of Attorney Mandelman's legal fees, the balance of the proceeds was paid to the client without satisfying Dr. G.D.'s lien.

¶ 16.   In a third case involving client B.S., the firm received a $23,000 settlement check in February 2001. Dr. G.D.'s bill showed he was owed approximately $3,400 at that time. Attorney Mandelman's firm, however, referred to Dr. G.D.'s 1999 statement that had been prepared before the receipt of several insurance payments. The 1999 statement showed an incorrect $6,616.88 balance due to Dr. G.D. Attorney Mandelman provided B.S. with an incorrect settlement statement showing Dr. G.D.'s lien to be $6,616.88 when in fact it was approximately $3,400.

¶ 17.   The firm distributed $14,282.12, leaving $8,717.88 on deposit from the settlement. The $8,717.88 was retained in the firm's trust account for approximately ten months without payment to Dr. G.D.

On December 7, 2001, the firm prepared a $5,600 trust account check made out to Dr. G.D. and sent it to a collection agency, in anticipation that the collection agency would convince the doctor to accept the check in full payment of his lien. The check was endorsed and cashed by the collection agency, but Dr. G.D. denies receiving the funds. On June 12, 2002, the firm sent B.S. $3,177.88, reflecting the balance of his settlement.

¶ 18.  In July 2002 Dr. G.D. sued B.S. in small claims court and obtained a $3,589.04 default judgment against him. Attorney Mandelman has admitted that his or his law firm's settlement with the collection agency and Dr. G.D. was to B.S.'s financial detriment in the amount of $2,200 and was not done by reason of any fault on the part of B.S. The referee recommended restitution of $2,200 to B.S.

III. THE D.K. CLIENT MATTER (COUNTS 5 AND 6)

¶ 19.  In the final matter, D.K. suffered injuries in two separate traffic accidents. First, as a pedestrian in a crosswalk, D.K. was hit by a truck and suffered injuries. Several months later, before her first case was resolved, D.K. was again injured in a separate automobile accident. D.K. retained Attorney Timothy Geary and Attorney Mandelman, both of whom agreed to serve as co-counsel on the two cases.

¶ 20.  In April 2005, with respect to the first accident, a $145,000 settlement check was sent to Attorney Mandelman's firm. He did not obtain D.K.'s endorsement and did not deposit the check into his trust account until August 1, 2005.

¶ 21.  Although Attorney Mandelman had agreed to provide updated notices to Medicare on D.K.'s behalf, he failed to do so timely. He also failed to pay the

subrogated Medicare lien and the assessed interest in a timely fashion. D.K. had requested the return of certain items from her file and Attorney Mandelman promised to do so within 24 hours, but he failed to return them. This misconduct gave rise to count five, charging a violation of SCR 20:1.3,[5] which requires a lawyer to act with reasonable diligence and promptness.

¶ 22.   In addition, Attorney Mandelman failed to pay D.K. $100 that had been left in his trust account for more than four months after he was discharged as her attorney, and two and one-half months after his license suspension. This misconduct gave rise to count six, former SCR 20:1.15(d)(1), which requires a lawyer to notify a client promptly when he receives funds in which a client has an interest and promptly deliver the funds absent an agreement or legal requirement to do otherwise.

¶ 23.   Upon the parties' stipulation, the referee accepted the disciplinary complaint's allegations to establish the factual basis for the counts charged. Attorney Mandelman and the OLR jointly recommended a sanction consisting of a one-year suspension of Attorney Mandelman's law license effective April 1, 2007, which is when Attorney Mandelman could have been eligible for reinstatement following his one-year suspension in 2006. Attorney Mandelman also stipulated to bear the costs of this disciplinary proceeding and pay restitution to clients S.M. and B.S. The referee accepted the parties' stipulated recommendation for the sanction, costs, and restitution.[6]

---

[5] SCR 20:1.3 provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[6] On November 17, 2008, the OLR filed a statement seeking $6,397.54 in costs.

¶ 24.   No appeal has been filed. This court reviews the matter according to the provisions of SCR 22.17(2).[7] We approve and adopt the referee's findings and conclusions regarding Attorney Mandelman's misconduct. Also, we conclude the seriousness of Attorney Mandelman's professional misconduct warrants license suspension of one year. We depart, however, from the referee's recommendation that the suspension should be retroactive to April 1, 2007. The court will impose whatever sanction it determines is appropriate to achieve the goals of lawyer discipline, regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 25.   In response to this court's order, the parties filed memoranda addressing the question of discipline. The OLR argues a one-year suspension is appropriate in view of numerous cases involving similar misconduct. *See, for example, In re Disciplinary Proceedings Against Kalal,* 2005 WI 138, 286 Wis. 2d 10, 704 N.W.2d 575; *In re Disciplinary Proceedings Against Archie,* 205 Wis. 2d 122, 555 N.W.2d 378 (1996). The OLR observes that little of the misconduct post-dated the most recent suspension, and nine months suspension resulting from

---

[7] SCR 22.17(2) provides:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

The parties have filed memoranda agreeing that because their stipulation was filed after the disciplinary complaint and has been approved by a referee, this matter does not proceed under SCR 22.12.

Attorney Mandelman's 2006 discipline together with an additional 12 months would be sufficient. The OLR contends that while retroactive suspensions are not commonplace, they do not lack precedent. *See In re Disciplinary Proceedings Against Gilbert,* 2004 WI 144, 276 Wis. 2d 395, 689 N.W.2d 50.

¶ 26. Attorney Mandelman contends a one-year license suspension retroactive to April 1, 2007, would be appropriate. He says he has taken responsibility for his misconduct by stipulating to all of the complaint's fact allegations as well as stipulating to the duration of the discipline sought by the OLR. He notes he had the option of seeking reinstatement but instead sought to resolve this matter before proceeding. Thus, he contends, a retroactive suspension would properly take into account all those factors.[8]

¶ 27. We acknowledge Attorney Mandelman has accepted responsibility for his misconduct. We conclude, nevertheless, the mitigating effect of his acceptance of responsibility must be viewed in relation to his extensive disciplinary history, along with the number of counts and the nature of his misconduct. In view of these significantly aggravating factors, we conclude that a retroactive suspension fails to achieve the goals of legal discipline. Accordingly, the one-year license suspension shall be effective the date of this order.

¶ 28. IT IS ORDERED that the license of Michael D. Mandelman to practice law in Wisconsin is suspended for a period of one year, effective the date of this order.

---

[8] The parties also addressed continuing education requirements and supervision of Attorney Mandelman's practice. We agree with the OLR that those matters are properly considered in connection with reinstatement proceedings.

¶ 29. IT IS FURTHER ORDERED that to the extent he has not yet done so, Michael D. Mandelman shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 30. IT IS FURTHER ORDERED that Michael D. Mandelman pay restitution as determined in the referee's report. If the restitution is not paid within 60 days of this order, Michael D. Mandelman's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 31. IT IS FURTHER ORDERED that within 90 days of the date of this order Michael D. Mandelman pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, Michael D. Mandelman's license to practice law in Wisconsin shall remain suspended until further order of the court.