# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP584-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael D. Mandelman, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>        Complainant-Respondent,<br>    v.<br>Michael D. Mandelman,<br>        Respondent-Appellant. |

---

DISCIPLINARY PROCEEDINGS AGAINST MANDELMAN

---

| | |
|---|---|
| OPINION FILED: | August 1, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs by *Spiros S. Nicolet* and *Nicolet Law Offices*, Milwaukee.

For the complainant-respondent, there was a brief by *Julie M. Spoke* and the *Office of Lawyer Regulation*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP584-D

STATE OF WISCONSIN  :  IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Michael D. Mandelman, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**Michael D. Mandelman,**

      **Respondent-Appellant.**

**FILED**

**AUG 1, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Although Attorney Michael D. Mandelman entered into a stipulation with the Office of Lawyer Regulation (OLR), pursuant to which he pled no contest to the 22[1] counts of misconduct pending against him and agreed that his license to practice law in Wisconsin should be revoked, he has filed an

_____

[1] The parties' stipulation and the referee's report refer in multiple places to 23 remaining counts. The lists of dismissed and remaining counts in the stipulation clearly state, however, that 23 counts were dismissed and 22 counts remained pending.

appeal from the report and recommendation of the referee, Attorney Christine Harris Taylor, which was based on that stipulation. Essentially, he seeks through his appeal to comment on certain characterizations and findings by the referee and to provide additional support for the referee's recommendation to make his revocation effective as of the date of his prior suspension, May 29, 2009.

¶2 When we review a referee's report and recommendation in an attorney disciplinary case, we affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶3 After reviewing this matter and considering Attorney Mandelman's appeal, we accept the referee's factual findings and legal conclusions based on the parties' stipulation. We further agree that the 22 counts of misconduct support the revocation of Attorney Mandelman's license to practice law in this state, which we make effective as of the effective date of his prior suspension. Because the record is not sufficient to award restitution to any particular person, we direct Attorney Mandelman to work with the OLR and his former colleague,

2

Attorney Jeffrey A. Reitz, to determine who is owed money from the trust accounts utilized by Attorney Mandelman and in what amounts. Finally, because Attorney Mandelman litigated this matter vigorously prior to entering into the stipulation, we order Attorney Mandelman to pay the full costs of this proceeding, which were $16,943.16 as of April 2, 2014.

¶4 The OLR initiated this disciplinary proceeding with the filing of a 45-count complaint. Attorney Mandelman filed an answer, which effectively denied many of the complaint's factual allegations and expressly denied the counts of professional misconduct. During the pre-hearing phase of this proceeding, the OLR dismissed 23 counts due to evidentiary problems, leaving 22 counts to be resolved.

¶5 After Attorney Mandelman had filed a summary judgment motion on the 22 remaining counts and the OLR had filed its response, Attorney Mandelman entered into a stipulation, pursuant to which he withdrew his answer to the complaint and pled no contest to the remaining 22 counts of misconduct. He agreed in the stipulation that the referee could use the relevant allegations of the complaint as the factual basis for finding misconduct on those remaining 22 counts. He further agreed with the OLR's sanction request for the revocation of his license to practice law in this state, retroactive to May 29, 2009, the effective date for his most recent one-year suspension. In re Disciplinary Proceedings Against Mandelman, 2009 WI 40, ¶28, 317 Wis. 2d 215, 765 N.W.2d 788 (Mandelman IV).

3

¶6 The stipulation contained the necessary representations by Attorney Mandelman and the OLR. Specifically, the parties agreed that Attorney Mandelman's plea of no contest and his stipulation to the OLR's requested level of discipline was not the result of plea bargaining. Attorney Mandelman represented that he understood the allegations of misconduct against him and his right to contest those allegations; that he understood the ramifications of his entry into the stipulation; that the understood his right to consult counsel and that he had, in fact, retained counsel in this matter; and that his entry into the stipulation had been knowing and voluntary.

¶7 The referee's report accepted the parties' stipulation and Attorney Mandelman's no contest plea and determined that the stipulated facts supported legal conclusions that Attorney Mandelman had engaged in the remaining 22 counts of professional misconduct. The referee's factual findings and conclusions of law are described in the following paragraphs.

¶8 Attorney Mandelman was admitted to the practice of law in this state in January 1980. He has been the subject of professional discipline on six previous occasions:

- In re Disciplinary Proceedings Against Mandelman, 158 Wis. 2d 1, 460 N.W.2d 749 (1990) (Mandelman I) (one-year suspension imposed for 27 counts of misconduct, including multiple counts of failure to act with diligence, failing to return files to clients promptly, simultaneously representing multiple clients with adverse interests, settling a client's claim without authorization, failing to communicate with clients, and making a

4

misrepresentation to the Board of Attorneys Professional Responsibility (BAPR));

- <u>In re Disciplinary Proceedings Against Mandelman</u>, 182 Wis. 2d 583, 514 N.W.2d 11 (1994) (<u>Mandelman II</u>) (18-month suspension imposed for misconduct that included failing to act with diligence, failing to respond to clients' requests for information, failing to refund a client's retainer, violating the rules regarding client trust accounts following his 1990 suspension, and failing to provide complete and accurate responses to BAPR);[2]

- Private Reprimand 99-18 (consensual private reprimand imposed in 1999 for making a false statement of fact to a tribunal);

- Private Reprimand 06-21 (consensual private reprimand imposed in 2006 for drawing a check from his business account to pay the mortgage payment of a personal injury client);

- <u>In re Disciplinary Proceedings Against Mandelman</u>, 2006 WI 45, 290 Wis. 2d 158, 714 N.W.2d 512 (<u>Mandelman III</u>) (nine-month suspension imposed for multiple instances of misconduct, including failure to act with reasonable diligence, failure to utilize a written fee agreement in a medical malpractice case, and persuading his client to sign a prospective release of claims against him without the client obtaining independent representation); and

- <u>In re Disciplinary Proceedings Against Mandelman</u>, 2009 WI 40, 317 Wis. 2d 215, 765 N.W.2d 788 (<u>Mandelman IV</u>) (one-year suspension imposed for misconduct that included collecting a fee without performing any work for the client, failing to

---

[2] For reasons that are not disclosed, the referee omitted the 1990 and 1994 suspensions from her report. They were listed in the OLR's complaint, however, and therefore were subject to Attorney Mandelman's stipulation. Moreover, in any event, this court can take judicial notice of its prior decisions and orders.

provide the client with a written settlement statement, retaining a client's funds for more than four years, making misrepresentations to a client, failing to obtain a client's signature on a settlement check and to deposit the settlement funds into the client trust account, and failing to provide a client's file and funds to the client).

¶9 Some general background information is necessary for a number of the counts of misconduct in the present disciplinary proceeding. Prior to 1999 Attorney Mandelman was the sole owner of his own law firm. He maintained client trust accounts at what were then known as M&I Bank and TCF Bank.

¶10 In 1999 Attorney Jeffrey Reitz joined Attorney Mandelman's firm. From 1999 to November 2001, Attorneys Mandelman and Reitz were co-owners of the law firm, which was known as Reitz and Mandelman LLC. During this time, the firm used the M&I Bank trust account exclusively. Trust account funds remained in the open but dormant TCF Bank trust account.

¶11 Between November 2001 and May 2005, the name of the law firm became Reitz, Mandelman & Lawent LLC. Attorney Reitz, however, became the sole shareholder for a large part of this time, with Attorney Mandelman becoming an employee of the firm. In June 2004, when disciplinary actions were pending against both Attorney Reitz and Attorney Mandelman, they formed a new service corporation, which they named Heartland Legal Group S.C., although they continued to practice under the name Reitz, Mandelman & Lawent LLC.

¶12 In December 2002, the law firm opened a new trust account with Tri City Bank. As had occurred with the TCF

6

account, Attorneys Mandelman and Reitz did not close the M&I trust account. That account simply sat dormant for approximately the next six years, with only a few disbursements being made from it over that span. As of December 31, 2006, that account still held $6,307.02, with outstanding un-cashed disbursement checks against the account of $5,542.58 and another $994.44 in funds for which no disbursement checks had been written.

¶13 When Attorney Reitz's license was suspended in May 2005,[3] Attorney Mandelman re-acquired full ownership of the law firm and formed another new service corporation by the name of Mandelman & Associates, S.C. Despite the creation of this new service corporation and the lack of any limited liability company, Attorney Mandelman continued to refer to the law firm as a couple of different limited liability companies,[4] including on his letterhead. In addition, Attorney Mandelman also ceased using the Tri City Bank trust account and opened yet another new client trust account at Pyramax Bank. As with the prior trust accounts, the Tri City Bank trust account essentially lay dormant for the next three years, with the exception of a few disbursements.

---

[3] In re Disciplinary Proceedings Against Reitz, 2013 WI 27, 346 Wis. 2d 375, 828 N.W.2d 225.

[4] He referred to the firm at different times as Mandelman & Lawent LLC or Mandelman, Georges & Lawent LLC. No such limited liability companies were created.

¶14 Effective July 1, 2006, Attorney Mandelman's license was suspended.  Attorney Reitz did not simply re-acquire ownership of the existing firm at that time.  Instead he formed a new law firm, Reitz, Parker & Lawent, S.C. (RPL), and opened a new client trust account for that firm (the RPL trust account).  The RPL firm then apparently acquired Attorney Mandelman's existing firm.  Attorney Mandelman's trust account at Pyramax Bank apparently sat dormant for the next two years until the majority of undistributed funds remaining in that account were transferred to the RPL trust account.

¶15 The first count to which Attorney Mandelman pled no contest, count two of the complaint, alleged that he had violated Supreme Court Rule (SCR) 20:7.5(a)[5] (and SCR 20:7.1(a)[6]) by making false or misleading communications regarding the name and organizational status of his law firm.  The referee concluded that the stipulated facts supported a conclusion of misconduct on this count.

---

[5] SCR 20:7.5(a) provides:

> A lawyer shall not use a firm name, letterhead or other professional designation that violates SCR 20:7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of SCR 20:7.1.

[6] SCR 20:7.1(a) provides that a lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services, such that the communication "contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

8

¶16 Count three of the complaint related to J.N., a client of Attorneys Mandelman and Reitz in 2003 and 2004. When Attorney Reitz's license was suspended in May 2005 and Attorney Mandelman resumed ownership of the law firm, $700 in settlement funds belonging to J.N. remained in the Tri City Bank trust account. Neither Attorney Mandelman nor Attorney Reitz ever paid the $700 sitting in the Tri City Bank trust account to J.N. The referee concluded that Attorney Mandelman's failure to disburse the $700 to J.N. constituted a violation of SCR 20:1.15(d)(1).[7]

¶17 Counts four through seven relate to Attorney Mandelman's representation of and appointment as guardian ad litem for S.M. in connection with the approval and implementation of a minor settlement. When the circuit court approved the settlement, it directed Attorney Mandelman to purchase an annuity for S.M. and then to place the remaining settlement funds into his trust account. The court further instructed Attorney Mandelman to negotiate reduced payments to

---

[7] SCR 20:1.15(d)(1) provides:

Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

the subrogated medical providers who had provided care to S.M. Specifically, the court's order stated that if the remaining settlement funds were insufficient to pay the subrogated medical providers, Attorney Mandelman was required to reduce his fee so that the providers could be paid first. Any balance remaining after the payment of the subrogated medical providers' claims and Attorney Mandelman's fee was to be paid to S.M.

¶18 On January 18, 2006, the sum of $30,870 in settlement funds for S.M. was deposited into Attorney Mandelman's Pyramax Bank trust account. Despite the circuit court's order, Attorney Mandelman immediately disbursed $18,125 to himself in full payment of his one-third contingent fee.

¶19 After Attorney Mandelman's license was suspended on July 1, 2006, a balance of $5,770.29 remained in S.M.'s subsidiary account. That amount was subsequently transferred to the RPL trust account, where it remained more than two years later. No further payments to subrogated medical providers were paid, nor was any portion of the remaining funds paid to S.M.

¶20 The referee concluded that these facts supported four counts of misconduct, including a lack of diligence (SCR 20:1.3),[8] a failure to pay trust account funds to their proper recipient over the approximately six months between the deposit of those funds in his trust account and the suspension of Attorney Mandelman's license (SCR 20:1.15(d)(1)),

---

[8] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

10

disobedience of the trial court's order to pay the subrogated parties before collecting his fee (SCR 20:3.4(c)),[9] and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by immediately taking his full contingent fee before paying the subrogated parties (SCR 20:8.4(c))[10].

¶21 Counts eight and nine of the complaint relate to Attorney Mandelman's representation of A.B. in a divorce action from 1997 through 2000. In the fall of 2000, $75,449.99 belonging to A.B. was deposited into Attorney Mandelman's trust account. A.B. did not authorize Attorney Mandelman to use the trust account funds to pay the law firm's $25,465 outstanding invoice nor did he pay that invoice using other funds. For the next four years, Attorney Mandelman did not disburse any of the trust account funds to A.B. or anyone else; the funds simply sat in the trust account not earning interest. Although $6,000 of the trust account funds were disbursed to the law firm in May 2005 pursuant to a settlement, the rest of the funds still remained in the trust account.

¶22 The referee determined that by failing to resolve the proper division of the $75,449.99 for more than four years, Attorney Mandelman had failed to act with reasonable diligence

---

[9] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[10] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

11

and promptness, in violation of SCR 20:1.3. She also concluded that the multi-year delay in disbursing the funds had constituted a violation of former SCR 20:1.15(b)[11] and current SCR 20:1.15(d)(1).

¶23 Counts 16 and 17 relate to negative balances in subsidiary trust accounts for three clients and a company owned by Attorney Mandelman. For example, on one occasion Attorney Mandelman disbursed $2,500 to his law firm in payment of its fees from a client's subsidiary trust account, although that client only had $1,500 on deposit in the trust account, creating a shortfall for that client of $1,000. On another occasion, he had a check written to his law firm for $4,000 from trust account funds allegedly belonging to a company he owned. The company, however, had no funds in the trust account at that time, creating a negative balance in that company's subsidiary account of $4,000.

¶24 The referee determined that the negative balances in the four subsidiary accounts resulting from disbursements of

---

[11] Former SCR 20:1.15(b), effective prior to July 1, 2004, provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

12

more funds from those subsidiary accounts than were present in those accounts had resulted in the improper use of other clients' funds, in violation of former SCR 20:1.15(a),[12] current

---

[12] Former SCR 20:1.15(a), effective prior to July 1, 2004 provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity.  Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise.  All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c).  The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin.  The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import.  No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such account.  Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin.  The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import.  Other property of a client or third person shall be identified as such and appropriately safeguarded.  If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

13

SCR 20:1.15(e)(5)(a),[13] and current SCR 20:1.15(f)(1)(b).[14] The referee also determined that Attorney Mandelman's payment to his law firm of money from his firm's trust account that the law firm was not entitled to receive had constituted a violation of SCR 20:8.4(c).

¶25 Counts 18 and 21 also relate to Attorney Mandelman's trust account records. In connection with Attorney Mandelman's petition for reinstatement from the nine-month suspension imposed in 2006, the OLR asked Attorney Mandelman to produce bank statements and other trust account records. Attorney Mandelman and his accountant, Constance Hackbarth, produced only some of the requested records. The electronic ledgers provided by Hackbarth were incomplete and showed that there had still been funds in the Pyramax Bank trust account just before it had been closed. In addition, Attorney Mandelman did not file with the OLR any overdraft reporting agreement for the Pyramax Bank

---

[13] SCR 20:1:15(e)(5)(a) provides that "[a] lawyer shall not disburse funds from any trust account unless the deposit from which those funds will be disbursed has cleared, and the funds are available for disbursement."

[14] SCR 20:1.15(f)(1)(b) provides:

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

trust account.  He also did not report the existence of any trust accounts on his Fiscal Year 2006 State Bar Dues Statement that he filed in August 2005.

¶26 The referee found two ethical violations based on these facts.  First, he determined that Attorney Mandelman had failed to create and retain complete and accurate trust account records, in violation of SCR 20:1.15(e)(6).[15]  He also concluded that Attorney Mandelman's failure to list his active trust accounts on his dues statement and to certify that he was in compliance with his record-keeping and overdraft reporting requirements had constituted a violation of SCR 20:1.15(i)(1) and (2).[16]

---

[15] SCR 20:1.15(e)(6) provides that "[a] lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

[16] SCR 20:1.15(i)(1) and (2) provides:

(1) Annual requirement.  A member of the state bar of Wisconsin shall file with the state bar of Wisconsin annually, with payment of the member's state bar dues or upon any other date approved by the supreme court, a certificate stating whether the member is engaged in the practice of law in Wisconsin. If the member is practicing law, the member shall state the account number of any trust account, and the name of each financial institution in which the member maintains a trust account, a safe deposit box, or both, as required by this section.  The state bar shall supply to each member, with the annual dues statement, or at any other time directed by the supreme court, a form on which the certification must be made.

(2) Trust account record compliance.  Each state bar member shall explicitly certify on the state bar

¶27 Counts 26 and 28-30 relate to the commingling of Attorney Mandelman's personal and business funds with client funds in his client trust accounts and the failure to report certain income on the tax returns of Attorney Mandelman or his businesses. In the years that they practiced together, Attorneys Mandelman and Reitz personally carried significant amounts of debt, as did the law firm that they owned. The law firm's business accounts were also frequently overdrawn. Those firm business accounts, as well as personal accounts belonging to Attorneys Mandelman and Reitz, were subject to liens and garnishments at various points in this time period.

¶28 In May 2003 Attorney Mandelman incorporated Heartland Holding Group, Inc. (Heartland) for the purpose of investing in real estate. Attorney Mandelman's co-owner of Heartland was an individual by the name of Steve Weston. Attorney Mandelman reported in a May 2007 deposition in his reinstatement proceeding that many of his assets were actually titled in Weston's name. Attorney Reitz was listed as the registered agent for Heartland.

¶29 In October 2004, Attorney Mandelman endorsed and deposited a check in the amount of $189,451 payable to Heartland into the law firm's Tri City Bank trust account. Over the next three months, $188,451 of this amount was disbursed from the trust account via 32 separate trust account checks. Although

certificate described in par. (1) that the member has complied with each of the record-keeping requirements set forth in subs. (f) and (j)(5).

16

Attorney Mandelman was not an owner of the law firm at this time and Attorney Reitz had no ownership interest in Heartland, 25 of these trust account checks were made payable to Attorney Reitz personally and another six checks were made payable to the law firm. One such check was paid to Paul J. Stein "for Payroll Account." The last portion of these funds was disbursed to Attorney Mandelman personally via a June 2, 2005 check.

¶30 The OLR later asked Attorney Mandelman about how the Heartland real estate transaction and the subsequent disbursements had been reported for income tax purposes. Attorney Mandelman initially responded by claiming that the Heartland real estate transaction had been a "possible 1031 exchange" so there would have been no taxable gain, but the way that the proceeds were deposited into and disbursed from the law firm's trust account was not compatible with that provision of the federal tax code. Attorney Mandelman never provided the OLR with income tax information for Heartland regarding this transaction, and his personal 2004 federal income tax return did not report any capital gain or loss from the transaction.

¶31 The referee concluded that the failure to report the Heartland real estate transaction and any accompanying gains or losses on any corporate or personal income tax return had constituted a violation of SCR 20:8.4(c) and the standard of conduct set forth in case law such as In re Disciplinary Proceedings Against Owens, 172 Wis. 2d 54, 56-57, 492 N.W.2d 157 (1992), which is enforced via SCR 20:8.4(f).

17

¶32 Attorney Mandelman also deposited other funds belonging to another business he owned, Liberty Holding Company Ltd. (Liberty Holding), into the law firm trust account and then transferred those funds to the law firm via trust account checks. In addition, the firm's trust account records showed that there was a "Mandelman" subsidiary account in the client trust account. Between May 2005 and November 2006, Attorney Mandelman deposited over $110,000 into the firm's Pyramax Bank trust account that was recorded in the "Mandelman" subsidiary account. Most of that money, approximately $83,000, was subsequently disbursed from the trust account via what were labeled on the firm's trust account ledgers as "cashiers." No payees for these "cashiers" were identified. Further, when the OLR asked for a list of cashier's checks that had been purchased with these funds, Attorney Mandelman did not produce them. Finally, a number of automated payments were disbursed from the Mandelman subsidiary account for bank fees and credit card fees, which resulted in a negative balance in the subsidiary account at times. Attorney Mandelman never explained how he had subsequently covered those negative balances or to what businesses those fees had related.

¶33 The referee determined that these facts supported three counts of misconduct. First, he found that Attorney Mandelman had twice violated SCR 20:1.15(b)(3)[17]—one violation

_____

[17] SCR 20:1.15(b)(3) provides that "[n]o funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

18

for depositing and disbursing the funds belonging to his Liberty Holding business and one violation for deposits and disbursements related to the "Mandelman" subsidiary account. In addition, the referee found that the deposit of over $110,000 from unknown sources into the "Mandelman" subsidiary account and the disbursements out of that subsidiary account to unknown payees for unknown purposes, without having created any records identifying the source, payee, or purpose of the transactions, had violated SCR 20:8.4(c).

¶34 Count 34 relates to another "Mandelman" subsidiary account that was created in the RPL trust account following Attorney Mandelman's suspension in July 2006. Over the next approximately 18 months, there was a relatively large number of transactions attributed to this "Mandelman" subsidiary account. Some of these transactions do not appear to have related to any particular client and some did not appear on the RPL trust account ledgers. In addition, more funds were withdrawn from this subsidiary account than were deposited into it, resulting in a negative balance. The referee concluded that by using the RPL client trust account to make unrecorded and unexplained personal and business deposits and withdrawals after his 2006 suspension, Attorney Mandelman had violated SCR 20:8.4(c).

¶35 Count 40 relates to Attorney Mandelman's claiming of $122,000 in business expenses related to "accrued bills" on his 2005 income tax returns. When the OLR discussed these claimed expenses with Hackbarth, she asserted that $84,616 of this amount represented "prepaid expenses," which she described as

19

costs incurred for clients prior to settlement of their personal injury cases or prior to billing, which had been accumulating over the years but had never previously been claimed as expenses. The firm's records showed, however, that the firm had indeed been reimbursed for many of these "prepaid expenses" during the time period when Attorney Reitz had been the owner and had been obligated to report firm income and expenses for tax purposes. Attorney Mandelman tried to provide an explanation to the OLR as to why he had deducted these allegedly accumulated expenses from his 2005 income, but his response did not correspond to what Hackbarth had told the OLR or to what was shown on the firm's financial records.

¶36 The referee determined that recklessly claiming a $122,000 business expense for "accrued bills" on his federal income tax return, when many of the claimed "prepaid expenses" had been previously reimbursed to the firm or could not be substantiated, had violated a standard of conduct set forth in Owens, 172 Wis. 2d at 56-57, contrary to SCRs 20:8.4(f)[18] and 20:8.4(c).

¶37 Count 42 also relates to inaccurate information on Attorney Mandelman's federal tax return, although this time for the 2006 tax year. Specifically, the referee found that Attorney Mandelman had reported $33,888.89 in residual income

---

[18] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

paid to him from the RPL law firm after his July 2006 suspension, when the RPL trust account records showed that he had been paid at least $65,614.93 in legal fees during this time. The referee determined that this underreporting of income, which she found to have been reckless, had also violated the standard set forth in Owens, 172 Wis. 2d at 56-57, contrary to SCRs 20:8.4(f) and 20:8.4(c).

¶38 Counts 43 and 44 relate to the representation of B.R., who had been injured in a motorcycle accident in April 2005. Shortly after B.R. had retained the law firm, Attorney Reitz had left the firm due to his disciplinary suspension and Attorney Mandelman worked on B.R.'s case. When Attorney Mandelman's license was suspended, he did not inform B.R. of his suspension or advise him that he should find another attorney of his choosing.

¶39 After his suspension, Attorney Mandelman submitted an affidavit to the OLR pursuant to SCR 22.26(1)(e), which requires a suspended attorney to certify that the attorney has provided written notice of the suspension to all clients with pending matters. Attorney Mandelman submitted this affidavit despite not having informed B.R. of his suspension and not identifying B.R. on an attached list of pending clients.[19]

---

[19] As noted above, Attorney Reitz's RPL law firm apparently acquired Attorney Mandelman's law firm following Attorney Mandelman's 2006 suspension. Consequently, Attorney Reitz took over responsibility for B.R.'s matter. B.R., however, was never informed of this change in law firms or asked to consent to the change.

21

¶40 The referee concluded that Attorney Mandelman's failure to notify B.R. of his July 1, 2006 suspension and to advise B.R. to seek representation of his choice elsewhere had constituted a violation of SCR 22.26(1),[20] which is enforced via

---

[20] SCR 22.26(1) provides:

On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and

22

SCR 20:8.4(f). In addition, Attorney Mandelman's filing of an affidavit that falsely claimed that he had notified all clients with pending matters and that a list of all clients with pending matters was attached to the affidavit violated SCR 20:8.4(c) and SCR 22.26(1)(e), which is enforced via SCR 20:8.4(f).

¶41 Finally, Count 45 relates to Attorney Mandelman's representation of G.W., a six-year-old boy who had been burned by a hot fudge dispenser in a restaurant. G.W.'s mother retained Attorneys Reitz and Mandelman in January 2002 to pursue a claim on G.W.'s behalf against the restaurant and its insurer.

¶42 The referee concluded that Attorney Mandelman's failure over a period of four and a half years to obtain and present a settlement offer[21] to G.W.'s parents, to initiate a

---

procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

[21] A June 2006 note from Attorney Mandelman's paralegal showed that there had been a $5,000 settlement offer from the restaurant or its insurer. This settlement offer, however, was never communicated to G.W.'s mother.

23

civil action, or to advise the parents that he did not believe G.W.'s claims were worth pursuing had demonstrated a failure to act with reasonable diligence and promptness, in violation of SCR 20:1.3.

¶43 The referee recommended that Attorney Mandelman's license be revoked, but that the effective date of the revocation should be concurrent with the start of Attorney Mandelman's most recent one-year suspension. In addition to relying on the parties' stipulation, the referee determined that revocation was supported by prior decisions containing similar violations. See, e.g., In re Disciplinary Proceedings Against Gedlen, 2007 WI 121, 305 Wis. 2d 34, 739 N.W.2d 274; In re Disciplinary Proceedings Against Sheehan, 2007 WI 3, 298 Wis. 2d 317, 725 N.W.2d 627; In re Disciplinary Proceedings Against Weigel, 2012 WI 124, 345 Wis. 2d 7, 823 N.W.2d 798. The referee also took into account this court's endorsement of the concept of progressive discipline. See, e.g., In re Disciplinary Proceedings Against Nussberger, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501. The referee further considered a number of aggravating and mitigating factors. Aggravating factors included Attorney Mandelman's significant disciplinary history, the fact that the trust account violations in this proceeding had been part of a pattern of misconduct, the presence of a dishonest or selfish motive (using the client trust accounts to conceal personal income and recklessly filing tax returns that misrepresented his income), the large number of violations in this proceeding, Attorney Mandelman's intentional

24

failure to provide information or documents that were requested by the OLR, and the harm suffered by Attorney Mandelman's clients.

¶44 On the mitigating side, the referee acknowledged Attorney Mandelman's claim that he had been suffering from chronic fatigue due to having Hepatitis C. The referee further acknowledged that during the time period relevant to this proceeding, Attorney Mandelman had undergone another round of therapy that had not worked. She also considered the affidavit of a doctor that Attorney Mandelman had submitted. The referee stated, however, that while the affidavit had addressed the effects of Hepatitis C in general, it had failed to aver that Attorney Mandelman had actually suffered from those side effects during the relevant time period.

¶45 With respect to her recommendation for a May 2009 effective date, the referee noted that the misconduct at issue here occurred primarily during 2004-2007, which was the same time period as the misconduct that was at issue in Mandelman IV. Moreover, Attorney Mandelman's license has remained suspended well past the one-year period of suspension imposed in that case. See In re Disciplinary Proceedings Against Cooper, 2013 WI 55, ¶25, 348 Wis. 2d 266, 833 N.W.2d 88. The referee concluded that under these circumstances the period of revocation should run concurrently with the one-year suspension that began on May 29, 2009.

¶46 The referee further recommended that Attorney Mandelman should be required to pay the full costs of this

25

proceeding. The OLR's statement of costs indicates that as of April 2, 2014, the costs of this proceeding were $16,943.16.

¶47 The referee did not make any recommendation with respect to restitution. The OLR filed a statement on restitution, which did not ask for any restitution award. With respect to the representations of B.R. and G.W., the OLR notes that there was no allegation or finding that Attorney Mandelman had misappropriated or misapplied client funds. As to the various trust account violations, the OLR asserts that there is not a readily ascertainable amount that would meet its criteria for restitution and that it could ask this court to award to specific payees. It states that it has not been able to determine whether the funds in the various trust accounts were or were not ultimately disbursed to the rightful owners. The OLR notes that in the Reitz decision, this court ordered Attorney Reitz to distribute all funds in his trust accounts to the rightful owners, or if the rightful owners could not be identified, to transfer the funds to the state treasurer's office as unclaimed or unidentifiable property. 346 Wis. 2d 375, ¶42. The OLR states that Attorney Mandelman has agreed to work with Attorney Reitz and the OLR to accomplish the same task for his clients.

¶48 We now turn to Attorney Mandelman's appeal, which is somewhat strange in that he is not asking this court to overturn any of the legal conclusions of misconduct nor is he requesting a less severe sanction than that recommended by the referee.

¶49 Attorney Mandelman specifically does not challenge any of the factual findings that underlie the counts of misconduct or the legal conclusions of misconduct. In light of Attorney Mandelman's stipulation to those facts, we accept the referee's findings of fact based on the remaining allegations of the complaint. We further determine that those findings adequately support the legal conclusion that Attorney Mandelman did engage in the 22 ethical violations alleged in the remaining counts of the complaint.

¶50 The primary focus of Attorney Mandelman's appeal is essentially a number of arguments urging this court to consider additional information regarding his accountant and the effects of his Hepatitis C infection as mitigating factors that would lessen his culpability for his violations without changing the end result recommended by the referee. He contends that the referee's discussion of mitigating factors contained erroneous findings of fact and did not give sufficient consideration to these two mitigating factors.

¶51 With respect to the actions of Hackbarth, Attorney Mandelman relies extensively on opinions from the OLR's accountant expert, who disputed Hackbarth's analysis of certain issues and the way that certain items had been reported on Attorney Mandelman's income tax returns. Attorney Mandelman asserts that he expected Hackbarth, as a certified public accountant, to make a proper evaluation of the records that he and the law firm submitted to her so that she could compile accurate accounting records for the law firm and prepare his

27

personal income tax returns. He further contends that it was Attorney Reitz's responsibility to ensure that Hackbarth had all of the information she needed to do both the accounting and the tax return preparation. If Hackbarth did not have all of the necessary information, Attorney Mandelman argues that it was her responsibility to make this fact known to him so that he could get her everything she needed.

¶52 We agree with the OLR's contention that Attorney Mandelman never explicitly argued to the referee that his reliance on Hackbarth should be considered a mitigating factor. In his statement in support of the stipulation, which was provided to the referee before she prepared her report, Attorney Mandelman did discuss generally his view of how things had operated with respect to the law firm's trust accounts and the preparation of his income tax returns and his view that Hackbarth's record-keeping and preparation of his tax returns had been substandard. This discussion, however, occurred in the context of providing "background information" about the trust account violations and of arguing that the referee should conclude that his conduct with respect to the false income tax returns was not intentionally fraudulent.[22] Attorney Mandelman did not mention his reliance on Hackbarth as a mitigating factor in the section of his memorandum discussing mitigating factors. Thus, the referee did not err in failing to include an explicit

---

[22] The referee did issue an amendment to her report that clarified that Attorney Mandelman's filing of false tax returns was reckless rather than intentional.

28

discussion of Hackbarth's shortcomings in the section of her report dealing with mitigating factors. Moreover, the limited information included in Attorney Mandelman's memorandum in support of the stipulation did not demonstrate that his reliance on Hackbarth had been reasonable and in good faith.

¶53 Attorney Mandelman also argues that the referee failed to give proper consideration to the affidavit of Dr. Michael G. Karos regarding the effects of Hepatitis C. In particular, Attorney Mandelman challenges the referee's statement that while Dr. Karos' affidavit described the effects of the condition in general, it failed to state directly that Attorney Mandelman had suffered from those effects during the relevant time period.

¶54 We acknowledge that Dr. Karos' affidavit not only discussed generally the side effects of the condition and the treatments, but also indicated that the disabling fatigue that accompanies the condition and its treatments did afflict Attorney Mandelman. Nonetheless, the affidavit did not provide all of the necessary evidence to prove that the Hepatitis C should be a mitigating factor. "A medical condition will not be considered in mitigation of discipline unless that condition is explicitly found to have caused the misconduct." In re Disciplinary Proceedings Against Schwartz, 134 Wis. 2d 18, 22, 397 N.W.2d 98 (1986). Dr. Karos did not state when Attorney Mandelman had suffered the fatigue and the other side effects (i.e., whether at the time of some or all of the misconduct). He also never opined that the fatigue or the other side effects had been a cause of Attorney Mandelman's misconduct. Thus, the

29

referee did not err in refusing to rely on the Hepatitis C infection as a reason to recommend a less severe sanction, especially where Attorney Mandelman had stipulated to the level of discipline.

¶55 Attorney Mandelman also challenges on appeal the referee's statement that his misconduct was as serious, if not more so, than the misconduct described in the Gedlen, Sheehan, and Weigel decisions.

¶56 It is true that not all of the misconduct that occurred in Gedlen, Sheehan, and Weigel is also present in this case. That is not unusual, however. Rarely do two attorney discipline cases involve precisely the same set of facts or the exact same list of violations. What is important is that in those decisions, the attorney's license to practice law in this state was revoked, and their misconduct was not clearly more serious than the misconduct committed by Attorney Mandelman.

¶57 In the present case, Attorney Mandelman did commingle his personal and business funds with client trust funds, he did convert the trust funds of clients by engaging in trust account transactions that left negative balances in his own subsidiary accounts, he did fail to deliver trust funds to clients for many years, he did keep incomplete and inaccurate trust account records (such that determining who is still owed money is a very difficult task), and he did on multiple occasions file income tax returns that were recklessly false, whether because of failing to report income or because of claiming expenses to which he was not entitled. He showed a multi-year lack of

diligence in one matter, failed to notify a client of his suspension in another, and also gave a false affidavit to the OLR. Moreover, this is not the first time that Attorney Mandelman is being disciplined for his misconduct. It is the seventh time, and the fifth time that his misconduct has been serious enough to warrant having his license to practice law suspended. We think that it is not improper to say that Attorney Mandelman's conduct is as serious as the misconduct in Gedlen, Sheehan, and Weigel, and that, in light of his lengthy disciplinary history, he should receive the same sanction that they did, namely the revocation of their licenses to practice law in this state.

¶58 We further conclude that a retroactive effective date of Attorney Mandelman's suspension would be appropriate under these circumstances. We have previously stated, including in a prior decision involving Attorney Mandelman, that retroactive effective dates of suspensions and revocations may be appropriate where the "'misconduct occurred prior to the [earlier] disciplinary proceeding and [the attorney's] license has remained suspended well beyond the period of suspension previously imposed.'" Cooper, 348 Wis. 2d 266, ¶25 (quoting Mandelman II, 182 Wis. 2d at 592). The misconduct at issue in this case did occur before the prior proceeding and Attorney Mandelman's license has remained suspended from May 2009 to the present time, a much longer period than the one-year suspension imposed in Mandelman IV.

31

¶59 Attorney Mandelman does not object to the referee's recommendation that he should bear the full costs of this proceeding. Although he ultimately stipulated to the remaining 22 ethical violations, he had vigorously litigated this matter up to that point, which necessitated the expenses incurred by the OLR and the referee. Consequently, we see no reason to depart in this case from our general policy of imposing full costs upon an attorney who engaged in misconduct.

¶60 Finally, we address the issue of restitution. Although it does appear that there were funds in the various trust accounts Attorney Mandelman or his firm maintained that were never disbursed to the proper clients or third parties before those trust accounts were closed, there is a lack of records from which the OLR or this court can determine what amounts are owed and to whom. Consequently, we conclude that there is not a sufficient basis upon which we could order restitution in favor of any particular client or third party.

¶61 Because our inability to order restitution to specific persons stems from the lack of records caused by Attorney Mandelman and/or his colleagues, we are unwilling simply to disregard the issue of restitution completely. First, we note that in order for Attorney Mandelman to petition for reinstatement, he will be required to allege in good faith and then to prove that he "has made restitution to or settled all claims of persons injured or harmed by [his] misconduct . . . . or, if not, [his] explanation of the failure or inability to do so." SCR 22.29(4m). We also conclude that we should follow the

path we took with Attorney Reitz in his disciplinary proceeding, where we ordered him to disburse all funds in his trust account to their rightful owners or to transfer the funds to the state treasurer's office if the rightful owner cannot be identified or located. Reitz, 346 Wis. 2d 375, ¶¶40, 42. The OLR states that Attorney Reitz has been working with that agency to determine the former law firms' restitution obligations and that Attorney Mandelman has agreed to work with the OLR and Attorney Reitz to complete that endeavor. We formalize that obligation here.

¶62 IT IS ORDERED that the license of Michael D. Mandelman to practice law in Wisconsin is revoked, effective May 29, 2009.

¶63 IT IS FURTHER ORDERED that Michael D. Mandelman shall work with the Office of Lawyer Regulation and Jeffrey A. Reitz to determine whether any of the funds in the client trust accounts he controlled should have been paid to particular individuals or entities and, if so, in what amounts. If such a determination is made, Michael D. Mandelman shall pay the amount owed to the applicable individual or entity.

¶64 IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael D. Mandelman shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶65 IT IS FURTHER ORDERED that, if Michael D. Mandelman is able to determine that restitution is owed to a particular individual or entity, the payment of restitution shall occur before the payment of costs to the Office of Lawyer Regulation.

¶66 IT IS FURTHER ORDERED that, to the extent he has not already done so, Michael D. Mandelman shall comply with the

33

provisions of SCR 22.26 concerning the duties of any attorney whose license to practice law has been revoked.